# WHEELING.

## MENDEL & CO. *v.* CITY OF WHEELING.

### Submitted June 3, 1886.—Decided July 3, 1886.

1. The power to organize and regulate water-works in a city being in its nature legislative or judicial, a failure of the corporate authorities to exercise the power does not render the city liable for damages caused by such failure. (p. 246.)

2. In the absence of a charter accepted by the city compelling it to erect and regulate water-works it is discretionary with the municipal corporation, whether it will or will not erect them or cause them to be erected; or after such works have been erected, whether it will lay water-pipes in certain streets; or after having laid such pipes whether or not it will abandon or remove them, and leave such streets without pipes or suffer them to be filled with earth

or other substances; and such power being governmental and discretionary, the city is not liable for loss by fire caused by the negligence of its servants and agents in suffering any of its water-pipes to become filled with earth or gravel, so that they will not convey any water.   (p. 246.)

3. Where the city owns its water-works and charges those, who are supplied with water, a certain annual " water-rent " for such supply, there is still by this fact no duty imposed on the city, from which a liability can be raised against the city for damages for loss of property by fire caused by the negligence of the agents and servants of the city in suffering the water-pipes to become useless, so that they will not supply water for the extinguishment of fire.   From such facts no contract could be implied to keep up a supply of water.   (p. 252.)

4. The city, which owns its water-works and charges the consumers of the water an annual water-rent, is no more liable to damage for loss by fire than a city, which does not own its water-works but keeps a paid fire-department supported by general taxation.   The city, which owns its water-works and charges a water-rent, does not in any proper sense receive a " profit " from such work, but it is a species of taxation for the legitimate purposes of the city-government.   (p. 258.)

5. M. & Co. lost a factory by fire in the city of Wheeling ; the city owned and operated its water-works and received water-rents from those supplied with water; M. & Co. were supplied with water and paid the charge ; the property was lost, because the supply-pipe through the negligence of the agents of the city was suffered to be filled with mud, so that it would not supply any water; HELD :

The city is not liable for damage for the loss.

*R. White* and *G. R. E. Gilchrist* for paintiffs in error.

*Caldwell* & *Caldwell* for defendant in error.

JOHNSON, PRESIDENT :

A fire originated in the plaintiffs' furniture-factory on Eoff street, in the city of Wheeling on March 26, 1881, and completely destroyed said factory. The plaintiffs brought an action on the case in the circuit court of Ohio county to recover damages against the city, on the ground that the city was bound to keep the water-pipes connected with the water-works of said city in good order and repair, and that by rea-

son of the carelessness and negligence of the city the water-pipe in Eoff street, to which water-pipes were connected leading into said factory, was out of repair and filled with mud and filth, and no water could be had to extinguish the fire, and in consequence thereof the factory was burned. In the original declaration there were eight counts setting up in various modes, that the plaintiffs owned in said city a furniture-factory worth with stock on hand $20,000.00, and that the city of Wheeling owned the water-works in said city with all the supply pipes and furnished water to its citizens for profit to itself and was in duty bound to keep such works and pipes in good order and repair; and that pipes were laid into the said factory from the pipe on Eoff street for the purpose of supplying it with water for general use and for the extinguishment of fire; that a fire broke out in said factory on March 26, 1881, without fault of the plaintiffs; that such fire could have been easily extinguished, if water from said pipes could have been obtained; but that through the carelessness and negligence of the city the pipe on Eoff street, which should have supplied the pipes leading into the factory, had been permitted to fill up with mud and filth, and in consequence thereof no water could or did flow through said pipes, and by reason of said carelessness and negligence of the city the plaintiffs' property was entirely destroyed by fire, to their damage $20,000.00.

The defendant demurred to the original declaration and each count thereof, which demurrer was sustained, and the plaintiffs filed an amended declaration containing eight counts, which were similar to the eight original counts. The defendant demurred to the amended declaration and each count thereof, which demurrer the court on January 22, 1883 sustained and gave costs against the plaintiffs. To this judgment the plaintiffs obtained a writ of error.

I will set out two of the counts in full, as specimen counts, showing a cause of action, if it can be found in any of them. The sixth count of the original declaration is as follows:

"And for this also, that heretofore, to-wit, on March 26, 1881, and before that date, at the county aforesaid, the said defendant in its corporate capacity was the owner of certain

works in said city, known as 'water-works,' and of certain pipes laid in said city in connection therewith, one of which pipes was then and there in Eoff street in said city, and the plaintiffs further aver that said defendant then and there, and before that time, in its corporate capacity did use said works and pipes for profit to itself in collecting water from the Ohio river and in distributing it through the pipes aforesaid. And the plaintiffs further aver, that it was then and there the duty of said defendant to keep and have said works and pipes in good and needful order and repair. And the plaintiffs further aver, that on the day and year last aforesaid, and for more than one year previous thereto, they owned in said city a certain factory situated adjacent to said Eoff street, in which, on the day and year aforesaid, there was contained valuable property and material of the plaintiffs, used and to be used in the prosecution of their business as manufacturers of furniture and coffins and cases in said building, which said factory was then and there known as Mendel's factory, and which, including said property and material, was of great value, to-wit, of the value of $20,000.00; of all which defendant had notice. And the plaintiffs further aver, that by and with the consent and agreement of said defendant pipes were laid from said defendant's pipe on Eoff street to the factory aforesaid of said plaintiffs for the purpose of furnishing said plaintiffs with all the water necessary for use in and about said building and factory. And the plaintiffs further aver, that for and in consideration of the sum of $100.00 paid by them to it said defendant had before said March 26, 1881, agreed with plaintiffs to furnish, for and during the current year ending on April 1, 1881, from its said pipe on Eoff street aforesaid through said pipes connecting the same with said factory and building all the water, which said pipes were capable of carrying in and through them in any event necessary to be used therein and therefrom during said year in and about said factory or for its protection from fire. And the plaintiffs further aver, that there was then and there attached to one of said pipes an attachment to which a hose could at once be affixed, in case a fire broke out in said factory; all which was known to said defendant at the time it so received the said sum of

money aforesaid. And the plaintiffs further aver, that on March 26, 1881, a fire broke out in said factory without their fault or neglect, or the fault or neglect of either of them, and that before the same had spread, and while it was in such condition as that it could have been easily controlled and extinguished, had such pipe, to which said attachment was affixed as aforesaid, and which then and there had a hose attached thereto, been supplied from said defendant's pipe on Eoff street with an ordinary supply of water, they, the plaintiffs, having then and there affixed a hose to said pipe upon their property aforesaid, sought to extinguish said fire and control the same by the use of water flowing through the same from said defendant's pipe on Eoff street; but the plaintiffs aver, that because and by reason of the carelessness and negligence of said defendant, the said water-works of said defendant and its said pipe on Eoff street were in such bad order and repair that no water would flow into said pipe to which said hose was attached, and that by reason thereof said fire could not then and there be controlled, managed or extinguished, and said property of said plaintiffs could not be protected therefrom, and that, because of said carelessness and negligence of said defendant as aforesaid, said fire spread and injured, burned and consumed the said factory and property of the plaintiffs then and there; and therefore plaintiffs say that they were, by reason of said want of care, and neglect of said defendant as aforesaid, damaged to the amount of $20,000.00. And hence they sue, &c."

The fifth court of the amended declaration is as follows:

"And for this also, that heretofore, to-wit, on March 26, 1881, at the city and county aforesaid, the plaintiffs owned and possessed a certain building situated adjacent to Eoff street on the west side thereof, between Twelfth and Thirteenth streets in said city, known as "Mendel's Factory," together with a large amount of furniture therein of the value of $5,000.00; of lumber and material of the value of $3,000.00; and of engines and tools of the value of $2,000.00; which said factory, furniture, lumber and tools were the property of the plaintiffs, and of great value, to-wit, of the value of $20,000.00, of all which the defendant had notice. And the plaintiffs further aver, that on the day and year last

aforesaid, at the city and county aforesaid, the defendant was the owner and proprietor of certain water-works in said city, and also of all the pipes laid in said city, in connection therewith, including a pipe laid in Eoff street in said city, which works and pipes were then and there used and intended to be used by said city in its corporate capacity in collecting water from the Ohio river and distributing it through portions of said city for the purpose of its being used by property owners therein in the protection of their property therein from injuries by fire, and for certain rents and charges, charged by the said defendant therefor and paid to and received by said city from such property owners, and also for the further purpose of such water being used by such inhabitants of said city, who were charged by said city for the use thereof and paid to the said city such charges. And the plaintiffs further aver, that the said defendant exercised the entire control of said works and pipes and enacted ordinances for the control thereof and for making the necessary repairs of the same and keeping the same in good order and repair, which ordinances were in full force at the time aforesaid. And the plaintiffs further aver, that on the day and year aforesaid, the said defendant had an officer known as the Superintendent of Water Works and charged by the defendant, among other things, with the duty of exercising general supervision over said works and pipes and superitennding all necessary repairs and improvements of the same, under the direction of a committee of the council of said city, known as the Committee upon the Water Works, and generally to discharge all duties imposed upon him by the ordinances of said city, among which duties was that of keeping said works and pipes in good order and repair and free 'from obstructions so that the water might thereby be supplied to such property owners and inhabitants as aforesaid for profit as aforesaid to said city. And the plaintiffs aver, that the said defendant, well knowing the premises and its duty in that regard, did not keep its said works and pipes in such good order and repair, but wrongfully and negligently permitted its said pipes to become and be decayed, worn and rotten, and also obstructed by mud and filth, so that, on the day and year last aforesaid, water from said water-works could not

and would not pass in and through said pipes and especially said pipe on Eoff street as aforesaid for the purposes aforesaid. And the plaintiffs further aver, that on the day and year aforesaid a fire broke out in said factory without the fault or knowledge of the plaintiffs, or either of them, and because of the want of water in said pipe of said defendant on Eoff street aforesaid, as aforesaid the said fire spread with force and violence in, upon and against said factory and said property therein contained, and damaged, injured, consumed and destroyed the same to the damage, by reason of the failure and negligence of the defendant as aforesaid, of the plaintiffs $20,000.00 ; and hence they sue, &c."

The only question submitted for our decision is : Under the facts stated is the city of Wheeling liable for the damage caused to the plaintiffs by the burning of their factory ? It is insisted by the counsel for the plaintiffs in error, that the plaintiffs having complied with the requirements of the city by paying at the rates established by the city for water to be furnished by it for use in their factory including water to extinguish fire, they had a right to demand of the city, that such water should be furnished, and it was the duty of the city to so furnish the water, and its negligence in failing to provide and keep in order the means, by which the water could be furnished at the time needed, renders it liable for the damages resulting from such negligence ; that, when any person has the right to demand the exercise of a public function, and there is an officer or set of officers authorized to exercise that function, then the right and the authority give rise to the duty. (*Carr* v. *Northern Liberties* 35 Pa. St. 380 ; *Sussex* v. *Strader*, 18 N. J. Law 108). All of the counts in the declaration being founded on the negligence of the city to supply water to extinguish the fire, the question is presented : Do the facts set out in any of the counts raise a legal obligation on the part of the defendant to supply water, the omission to do which caused the injury ? If this legal obligation exists, the plaintiffs have shown a cause of action ; otherwise they have not.

Where a municipal corporation is by its charter authorized to do a certain thing, and in the improper performance of the work it inflicts injury on any person, it has been many

times decided, that the corporation is liable for the damage caused by such injury. A city ordered certain privy-inlets connecting with a sewer to be closed on account of the stench. In doing this the workmen closed an inlet from the plaintiff's house not connected with a privy, and caused the water to flow back on her premises. The city was held liable. (*Semple* v. *Vicksburg*, 62 Miss. 63 ; S. C. 52 Am. R. 181).

A city having contracted with private persons for the construction of municipal water-works, and the contractor having in the performance of such work negligently caused a personal injury to a third person by blasting in the street, it was decided the city was liable in damages therefor. (*Loganport* v. *Dick*, 70 Ind. 65 ; S. C 36 Am. R. 166).

In *Moulton* v. *Scarborough*, 71 Me. 267 (36 Am. R. 308) it was held, that a town carrying on a farm for the support of its poor is liable for an injury done to a citizen by a vicious ram owned by the town and kept on the farm for the propagation of sheep, and which was suffered negligently to run at large.

In *Cowley* v. *Sunderland*, 6 H. & N. 565, the corporation was held liable for an injury caused by negligently leaving a rod projecting from a rapidly revolving cylinder attached to a machine for drying clothes. In this case it appeared, that the town under provisions of 9 & 10 Vict. c. 74 was the owner of baths and wash-houses, which were managed by the town-council for bathing and washing clothes, certain prices being paid to the town.

In *Scott* v. *Manchester*, 2 H. & N. 203, the municipal corporation was empowered by act of parliament to construct gasworks to supply gas and to sell and dispose of coke; the profit to go in reduction of the water-rates and otherwise toward the improvement of the town. In an action against the town the declaration alleged, that the town employed workmen to lay down the pipe, who so. negligently conducted themselves, that a piece of metal was projected against the plaintiff. The town was held liable. Cockburn, C. J., said, the case was distinguishable from those stated by counsel: "Here though the individuals composing the corporation acted gratuitously, yet the corporation and the township derive a profit from carrying on the works."

The Mersey Dock board was empowered by Act of Parliment to construct docks and charge for the use of them and was held liable for injury to a vessel from an obstruction negligently left in the docks. (11 H. L. Rep. Cas. 686).

In *Murphy* v. *Lowell*, 124 Mass. it was held, that the city was not liable for damages for negligence in the improper construction of a sewer.

In *Oliver* v. *Worcester*, 102 Mass. 500, the city was held liable for injury to an individual resulting from a hole dug by a workman in repairing a building owned and used by the city.

In *Hand* v. *Brookline*, 126 Mass. 324, the town had accepted a statute authorizing it to supply its inhabitants with water at a rate to be established by the town ; and it was held, that the town was liable for an injury to a person caused by the undermining of a street by the leaking of the water-pipes. The court said : "For negligence in the manner of constructing such works, by which injury is caused to a person or property, the town is just as liable as an individual."

The city of Providence owned its water-works and charged its citizens for water used. The city was held liable for the death of a horse caused by the careless management of one of the hydrants. (*Aldrich* v. *Tripp*, 11 R. I. 141, 23 Am. 434).

In *Oliver* v. *Worcester*, 102 Mass. 500, Gray J. said : "Where a special charter, accepted by a city or town or granted at its request, requires it to construct public works and enables it to assess the expense thereof upon those immediately benefitted thereby or to derive benefit in its own corporate capacity from the use thereof by way of toll or otherwise, the city or town is liable as another corporation would be for any injury done to any person in the negligent exercise of the power so conferred." He cites. *Henly* v. *Lyme-Regis*. 5 Bing. 91 ; *West* v. *Brockport*, 16 N. J. 161 ; *Wightman* v. *Washington*, 1 Black 40 ; *Eastman* v. *Meredith*, 36 N. H. 289 ; *Bigelow* v. *Randolph*, 14 Gray 543 ; *Child* v. *Boston*, 4 Allen 41.

The same learned judge in *Hand* v. *Brookline*, 126 Mass. 325, said : " The cause of action set forth in the count is not the omission to perform the duty imposed by general laws upon all cities and towns alike of keeping the highways in

repair, but it is the neglect in the construction of the works, which the town had been authorized by a special statute, voluntarily accepted, to construct and receive profits from, just as a private corporation might.  For a neglect in the manner of constructing such works, by which injury is caused to person or property, it is just as liable as a private corporation or an individual." He cites, *Scott* v. *Mayor*, 1 H. & N. 59 ; 2 H. & N. 204 ; *White* v. *Hindley Local Board*, L. R. 10 Q. B. 219 ; *Bailey* v. *Mayor &c.*, 3 Hill 531 ; S. C., 2 Denio 433 ; *Aldrich* v. *Tripp*, 11 R. I. 141 ; *Oliver* v. *Worcester*, 102 Mass. 489 ; *Hill* v. *Barton*, 122 Mass. 344 ; *Murphy* v. *Lowell*, 124 Mass. 564.

There are many cases, in which it has been held that a city is not liable for the negligence of its servants.

In *Richmond* v. *Long's Administrator*, 17 Gratt. 375, it was decided, that municipal corporations in the exercise of their political, discretionary and legislative authority are not liable for the misconduct, negligence or omissions of the agents employed by them.  It was consequently held in that case, that the negligence of the city's agents at a hospital, into which a slave had been admitted, did not render the city responsible for the loss of the slave.

It was held in *Ogg* v. *City of Lansing*, 35 Ia. 495 (11 Am. R. 499), that the city of Lansing was not liable for the negligence of persons placed in charge of a small-pox hospital, which the city had established.   In that case it was well said :  " It is impossible to conceive of the endless complications and embarrassments, which such a doctrine would involve, and of the extent, to which the public interests would thereby suffer.   It is safe to assume, that, if such were recognized as the law, no town would voluntarily assume corporate functions, and that every industrial and commercial interest would become paralyzed."   To the same effect are *Bryant* v. *St. Paul*, 33 Minn. 289, and *Summers* v. *Commissioners*, 103 Ind. 262, 43 Am. R. 512.

It has been decided, that a municipal corporation is not liable in damages for an injury caused by the carelessness of a laborer employed in repairing the streets ; that the duty of keeping public ways in repair is one imposed upon all towns and cities alike as a public duty, from the performance of

which they derive no special advantage in their corporate capacity; and that the agents selected to perform this duty in obedience to the laws of the commonwealth are to be regarded as public officers rather than as the servants or agents of the municipal corporation, by which they are employed. The relation of master and servant does not exist and the maxim *respondeat superior* does not apply. ( *White* v. *Phillipston*, 10 Metc. 108; *Bigelow* v. *Randolph*, 14 Gray 543; *Hafford* v. *New Bedford*, 16 Gray 297; *Walcott* v. *Swampscott*, 1 Allen 101; *Child* v. *Barton*, 4 Allen 52; *Barney* v. *Lowell*, 98 Mass. 570; *Detroit* v. *Blakeby*, 21 Mich. 84).

In this State municipal corporations are by statute held liable for injury suffered by reason of the streets of a city or town not being kept in good repair. (*Griffin* v. *Williamstown*, 6 W. Va. 312; *Sheff* v. *Huntington*, 16 W. Va. 307; *Wilson* v. *Wheeling*, 19 W. Va. 323).

In the case in 16 W. Va. the question was not raised or discussed, whether in the absence of a statute a municipal corporation could be held liable for injury caused by a failure to keep its streets in repair. It *was* discussed in *Wilson* v. *Wheeling*, 19 W. Va. 323; and Haymond, judge, in delivering the opinion of the Court said: "It is a principle of nearly universal acceptation in this country, that where a town is incorporated and is given control over the streets and walks within its corporate limits, and is empowered to provide the means to make and repair them, the corporation not only assumes this duty but by implication agrees to perform it for the benefit and protection of all, who may have occasion to make use of these public easements; and that for failure in this duty the corporation is responsible to the party injured." He cites Cooley on Torts 625; *Wightman* v. *Washington*, 1 Black 39; *Chicago* v. *Robbins*, 2 Black 418; *Nebraska* v. *Campbell*, 2 Black 590; *Springfield* v. *St. Claire*, 49 Ill. 476; *West* v. *Rockport*, 16 N. Y. 161; *Mayor* v. *Furze*, 3 Hill 612; *Storrs* v. *Utica*, 17 N. Y. 104. Whether under statutes or upon common law principles municipal corporations are now very generally held liable for negligence in failing to keep their streets in repair.

A city is not bound to construct a sewer and is therefore not obliged to construct such a sewer, as will be sufficient to

carry off all the surface-water; and having constructed a
sewer, it may in its discretion wholly abandon it; and where a
city does not leave individuals in any worse condition by such
abandonment, than they would have been in, if such sewer
had never been constructed, the city will not be liable to in-
dividuals for injury caused by the overflow of surface-water.
(*Atchison* v. *Challis*, 9 Kansas 603; *Carr* v. *Northern Liberties*,
35 Pa. St. 324; *Mills* v. *Brooklyn*, 62 N. Y. 489).

These cases are not in conflict with *Krong* v. *Baltimore*, de-
cided January 29, 1886, by the supreme court of Maryland. 2
Curt. R. 629. In that case while holding that the city was
liable for damages caused by the bursting of an imperfect
sewer Miller, judge, said: "The present case differs in all its
essential particulars from *Munn* v. *Pittsburg*, 40 Pa. St.
364, relied on by counsel for appelless. The proposition
laid down in that case, that where a city pours its sewers and
drains into a natural running stream, into which it had the
right to pour them, it is under no obligation to keep the stream
clear to its mouth on the private property of all the land-
holders through which it flows, has no application here. The
facts of this case as they are presented in this record, do not
justify the city in invoking that rule even if we should regard
it as correct. In what we have thus said we are not to be un-
derstood as holding that the city would be liable for damages
caused by the insufficiency of the size or dimensions of this
sewer as already constructed to carry off the water and drain-
age flowing through it or by overflows in case of heavy rains.
No such question is presented by this record."

In *Hannon* v. *The County of St. Louis*, 62 Mo. 313, it was
decided, that the rule, that counties being political sub-di-
visions of the State are not liable for the laches or miscon-
duct of their servants, has no application to a neglect of those
obligations incurred by counties, when special duties are
imposed on them. Thus, where the county of St. Louis
made a contract for laying a water-pipe to the county insane
asylum, the work being done under the supervision of the
county-engineer, and, while a trench was being dug in the
grounds of the asylum, the earth caved in and killed one of
the workmen, it was held, that the duty, in which the county
was engaged, was not one imposed by general law upon all

counties but a self-imposed duty; and *quoad hoc* the county was a private corporation engaged in a private enterprise, more especially as the work was being done on its own property, and governed by the same rules as to its liability; that in such case it is immaterial, whether the performance of the work is voluntarily assumed in the first instance or is a special duty imposed by the legislature and assented to by the county; and municipal and *quasi* corporations are subject to the same doctrine of liability.

In *The Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 463, the corporation of the city of Rochester having power to cause common sewers, drains, &c., to be made in any part of the city directed a culvert to be built for the purpose of conducting away the water of a natural stream, which had previously been the outlet, through which the surface-water of a portion of the city had been carried off. A freshet having occurred, the culvert in consequence of its want of capacity and the unskilfulness of its construction failed to discharge the waters, so that they were set back upon the factory of the plaintiff and injured their property. It was held, that the city was liable for the damage. It was decided that an ordinance of a city-corporation directing the construction of a work within the general scope of its powers is a judicial act, for which the corporation is not responsible; but the prosecution of the work is ministerial in its character, and the corporation must see that it is done in a skilful manner. To the same effect are *Mayor* v. *Furze*, 3 Hill 612; *Child* v. *Boston*, 4 Allen 41; *Row* v. *Portsmouth*, 56 N. H. 291.

It has been held in this State, that where a city in grading its streets by cutting ditches and drains collects surface-water and casts it in a body upon the lot or ground of the proprietor below, unless it is so cast into a natural water-course, the proprietor sustains a legal injury and may recover therefor. (*Gillison* v. *Charleston*, 16 W. Va. 282).

It has often been decided, that where the powers created and duly enjoined are given and laid upon officers or agents to be named by the municipal corporation for the public benefit and as a convenient method of exercising the general government of the corporation, such corporation is not liable for the negligent omission or action of such officers or agents.

(*Maximillian* v. *Mayor*, 62 N. Y. 160; *Richmond* v. *Long*, 17 Gratt. 379; *Medical College* v. *Cleveland*, 12 Ohio St. 375; *Wheeler* v. *Cincinnati*, 19 Ohio St. 19; *Taintor* v. *Worcester*, 123 Mass. 311; *Fisher* v. *Boston*, 104 Mass. 311; *Eastham* v. *Meredith*, 36 N. H. 284; *Howard* v. *San Francisco*, 51 Cal. 52; *Heller* v. *Mayor*, 53 Mo. 159; *Hafford* v. *New Bedford*, 16 Gray 297; *Grant* v. *Erie*, 69 Pa. St. 420; *Carr* v. *Northern Liberties*, 11 Casey 324; *Welsh* v. *Rutland*, 56 Vt. 228; *Wilcox* v. *Chicago*, 107 Ill. 334; *Robinson* v. *Evansville*, 87 Ind. 334; *Nickerson* v. *Hydraulic Co.*, 33 Am. R. 1; *Patch* v. *Covington*, 17 B. Mon. 722; *Brenkmeyer* v. *Evansville*, 29 Ind. 187; *Foster* v. *Water Co.*, 3 Lea. 42; *Black* v. *Columbia*, 19 So. Ca. 412 (45 Am. R. 785); *Davis* v. *Montgomery*, 51 Ala. 139; *Van Horn* v. *Des Moines*, 63 Ia. 447).

Some of the above authorities hold according to this principle, that, the power to organize and regulate a fire-department being in its nature legislative or judicial, a failure of the corporate authorities to exercise the power does not render the corporation liable for such failure. The principle is, that, where the power to organize and regulate a fire-department is not compulsory but discretionary, its regulation is governmental in its character, and no acts of omission with reference thereto can raise a legal liability against the city; and further, where the city is acting merely in its governmental character for the public good, it is not responsible for the negligence of its servants or agents. In a case, where a man was injured by a hose-carriage, while the fire-department of a city was on duty to extinguish a fire, it was held, that a city is not liable for a personal injury occasioned by the negligence of the members of a fire-department established by the city and paid by the city-council. The reason given is, that the act was being done under the exercise of the governmental authority of the city for the general welfare of all its inhabitants. (*Hafford* v. *New Bedford*, 16 Gray 295).

The same principle is recognized in *Fisher* v. *Boston*, 104 Mass. 87, although the fire-department of the city of Boston was established and regulated under a special statute, which by its terms required acceptance by the city, before it took effect. In that case it was held, that "in the absence of ex-

press statute municipal corporations are no more liable to actions occasioned by injuries from negligence for using or not keeping in repair the fire-engines owned by them than in the case of a town-house or a public highway." The court cites, *Hafford* v. *New Bedford*, 16 Gray 275 ; *Eastham* v. *Meredith*, 36 N. H. 284 ; *Bigelow* v. *Randolph*, 14 Gray 541 ; *Oliver* v. *Worcester*, 102 Mass. 489. The same principle has been recognized in Pennsylvania, where it is decided, that, where an act of assembly empowered a city to make a sufficient number of reservoirs " to supply in case of fire," and the council constructed reservoirs but suffered one to become dilapidated, so that it would not hold water, and a fire occurred near this reservoir, and no water could be obtained from it, and in consequence thereof the buildings were burned, the owner claiming damages and alleging negligence on the part of the city, the city was not liable, because it was discretionary with the city, whether it would construct reservoirs, and having constructed them it was discretionary with the city, whether it would maintain them or allow them to fall into disuse. (*Grant* v. *Erie*, 69 Pa. St. 420). To the same effect are *Nickerson* v. *Bridgeport Hydraulic Co.*, 46 Conn. 24 ; *Davis* v. *Clinton Water Works Co.*, 54 Ia. 59 ; *Wheeler* v. *Cincinnati*, 19 Ohio St. 19 ; *Taintor* v. *Worcester*, 123 Mass. 311 ; *Brinkmeyer* v. *Evansville*, 29 Ind. 187 ; *Foster* v. *Lookout Water Co.*, 3 La. 42 ; *Robinson* v. *Evansville*, 87 Ind. 334 ; *Jewett* v. *New Haven*, 38 Conn. 368 ; *Hayes* v. *Oshkosh*, 33 Wis. 314 ; *Howard* v. *San Francisco*, 51 Cal. 52 ; *Heller* v. *Sedalia*, 53 Mo. 159.

Where a fire-department in arresting the spread of fire in a city destroys houses or other property, the city is not liable for such loss. (*Field* v. *Des Moines*, 39 Ia. 275 ; *Hayes* v. *Oshkosh*, 33 Wis. 314*). Nor is a city liable for damages for injury to a citizen carelessly inflicted by a fireman engaged in extinguishing a fire. (*Jewett* v. *New Haven*, 38 Conn. 368*).

It seems therefore to be well settled, that, when a municipal corporation through its officers as agents is merely carrying out or exercising its purely governmental powers, it is not liable for any negligence of its officers or agents. This is so held from the wisest public policy; because, should a

different rule obtain, municipal corporations could not exist. But there is another large class of cases, in which the powers of a municipal corporation are extended beyond what is strictly necessary tor the protection of the lives, health, prosperity and peace of its citizens; as where it carrys on works of internal improvement, and in the construction ot these works there is misfeasance, and by the unskillful and careless doing of the thing authorized to be done, persons or property are injured. In such cases the municipal corporation is held liable.

In this case the counsel for plaintiff in error make a distinction between the liability of a municipal corporation, where it owns its water-works and maintains them by taxes assessed upon the property generally in the city, and where it owns the works and charges each person a certain sum tor the water he uses. They claim, that in the one case the works are run for a *profit* to the corporation and not in the other, and that the city is liable in the one case and not in the other. They insist, that upon the principle announced in the following cases the declaration states a good cause of action : *Mayor &c. of Lyme-Regis.* v. *Henly*, 5 B. & Ad. 366, S. C. 1 Bing. N. C. 222; *Weightman* v. *Washington*, 1 Black 40; *Oliver* v. *Worcester*, 102 Mass. 490; *Fisher* v. *Boston*, 104 Mass. 93; *Tainter* v. *Worcester*, 123 Mass. 316; *Bailey* v. *N. Y.*, 3 Hill 539; *Riddle* v. *Proprietors, &c.*, 7 Mass. 169; *Barnaby* v. *Lancaster Canal*, 11 A. & E. 223; *Scott* v. *Mayor*, 1 Hurl. & N. 59; *Scott* v. *Mayor*, 2 Hurl. & N. 204; *Cowley* v. *Sunderland*, 6 Hurl. & N. 565; *Mersey Dock Case*, 11 House of L. Cases, 686; *Pittsburg* v. *Grier*, 22 Pa. St. 530; *City of Allegheny* v. *Campbell*, 107 Pa. St. 530; *Buckbee* v. *Brown*, 21 Wend. 110; *Aldrich* v. *Tripp*, 11 R. I. 141 (23 Am. Rep. 434); *Roe* v. *Portsmouth*, 56 N. H. 291 (22 Am. R. 464); *Sawyer* v. *Core*, 17 Gratt. 241; *Hand* v. *Brookline*, 126 Mass. 224; *James River & K. Co.* v. *Early*, 13 Gratt. 551; *Tompkins* v. *Kanawha Board*, 19 W. Va. 257; S. C. 21 W. Va. 224.

In the case of *Lyme-Regis* v. *Henly*, it appeared, that the Crown had granted a borough in fee-farm to the corporation of Lyme-Regis and acquitted it of a part of the rent, and the corporation was to repair the sea-wall, &c. It was held,

that the corporation was liable to a citizen, whose house had been injured in consequence of the neglect of the corporation to repair the sea-wall. The charter from the King required "that the corporation and their successors, all and singular, of the buildings, banks, sea-shores, and all other mounds and ditches within the said borough or to the said borough in any-wise belonging or appertaining, * * * * and at their own costs and expenses thenceforth from time to time, forever should well and sufficiently repair, maintain and support, as often as it should be necessary or expedient." Park, judge, said : "Now these words are undoubtedly an expression of the King's will that the corporation should repair ; but they are not the less a condition on that account ; on the contrary they show the consideration for the grant, the motive inducing the King to make the grant, and consequently the terms and conditions on which the grant was to be accepted.

So in *Weightman* v. *Washington* the city by its charter was expressly required to make a certain bridge therein described and keep it in repair. The duty was imposed in consideration of privileges granted ; and the means to perform the duty were within the control of the corporation. I: was held, that, where a person or property was injured by reason of the failure of the city to keep the bridge in repair, the city was liable for damages for such injury. (See also *Riddle* v. *Proprietors, &c.*, 7 Mon. 168). The liability in such a case extends to injuries arising from neglect to perform the duty enjoined or from carelessness and unskilfulness in its performance.

If in the case at bar it had appeared, that the charter of the city of Wheeling required the city to erect water-works, to lay pipes to all the houses in the city and to keep the water-works and all the pipes in good repair, and that the city had accepted such a charter and had failed to keep the works and pipes in repair, and that in consequence of *such failure* under *such circumstances* the plaintiffs' property had been destroyed, then the two cases we have reviewed would have been authority for holding the city liable in this case. *There* was no discretion lodged in the town of Lyme-Regis or the corporation of Washington ; they were by the express terms of their respective charters compelled to keep the sea-wall and bridge

in repair. Here the charter of Wheeling does not require the city to have any water-works. It was discretionary with the city, whether it would organize and keep up water-works or not. It was by the legislature entirely left to the legislative wisdom of the city-council, whether it would have water-works or not; and whether it would permit a private corporation to build such works and allow it to charge the citizens for the water thus supplied, or the city would own the works itself and charge the citizens for the water supplied and support the works by a tax levied upon the people; and having built the works it might in its discretion suffer them to fall into disuse. Therefore the cases we have reviewed have no application whatever to a case like this.

*Grier* v. *Pittsburg*, a case much relied on by counsel for plaintiff in error, *City of Allegheny* v. *Campbell, supra*, to which may be added *Petersburg* v. *Applegarth*, 28 Gratt. 321, the *Wharf Case*, and also *Early* v. *James River & K. Co.*, 13 Gratt. and *Tompkins* v. *Kanawha Board*, 19 W. Va. *supra*, the *Public Improvement Cases*, it seems to us, give no countenance to the claim, that a municipal corporation owning and operating its water-works and receiving "water-rent" for water furnished is responsible in damages to a property-owner for loss by fire through the failure of the city authorities to keep the water-pipes in proper repair and condition. The true ground, upon which the plaintiffs were permitted to recover in those cases, was that the corporations had exclusive control of wharves and streams and collected tolls not from the citizens of the particular municipal corporations, or citizens of the states, in which the navigable streams flow, but from the public generally, from persons beyond the limits of the states and of the cities. Sherman and Redfield on Negligence sec. 585 have well and truly said: "The owner or lessee of a dock, pier or wharf receiving tolls for its use is bound to keep it in reasonably good condition, so that, as far as by the use of ordinary care, diligence and skill he can make it so, it shall be fit for the use of vessels and safe for all persons to enter upon, who have a right of access. If the wharf-owner receives tolls from the public generally, he owes this duty to the public and is liable to any one specially injured by his neglect to fulfil it."

In the case of *Pittsburg* v. *Grier* the city owned and kept the wharf on the Ohio river and received tolls from all steamboats from all ports owned by men, who had no special interest in the city of Pittsburg, but who in their traffic were compelled to land at the wharf; and these owners of boats thus paying toll had a right to have the wharf kept free from obstructions, so that they might land with safety. The city after receiving their tolls failed to keep the wharf in good condition but suffered pig-iron to lie on the wharf, and the river rising over it, the navigator could not see it, and in consequence his boat was sunk, and the city was held responsible for the damage. It was the same reason, that induced the Supreme Court of Appeals of Virginia to hold the city of Petersburg liable in a similar case. The city owned the wharf and charged wharfage to the owners of vessels from all parts of the world. It would be hard indeed if the owner of an English vessel, who was charged or might be charged wharfage for his vessel lying at the Petersburg wharf, expecting the wharf to be kept in good repair and suspecting no danger and having nothing but a commercial interest in the city should through the negligence of the city authorities lose his vessel on obstructions carelessly left on the wharf, if he could not hold the city responsible for the damage. There is nothing governmental in keeping the wharf; private individuals could keep it as well; and the city invites the whole world to send vessels to load at its wharf and keeps up the wharf by charging wharfage, and a duty is thereby raised to keep the wharf in good repair, and the city is liable for damages suffered by its failure so to do.

It is the same principle that governed the courts in *Early* v. *James River and Kanawha Company*, and *Tompkins* v. *The Kanawha Board*. They undertook for tolls to keep the river free from obstructions charged tolls to everybody, who navigated the river; and they were held therefore bound for damages caused by their failure to keep the river free from obstructions.

The *Mersey Dock Case*, and *Barnaby* v. *Lancaster Canal*, 11 A. & E. 223, are of the same character as those, which we have just referred to and for the same reason have no application to the case before us. See also *Buckbee* v. *Brown*, 21 Wend. 110.

In *Scott* v. *Mayor*, 1 H. & N. 59, and S. C. 2 H. & N. 204, it appeared, that the corporation of Manchester by act of parliament was empowered to construct gas-works and to supply gas and sell and dispose of the coke, the profits to go in reduction of the water-rates and otherwise to the improvement of the town. In an action against the town the declaration alleged, that the town employed workmen to lay down the pipes, who so negligently conducted themselves, that a piece of metal was projected against the plaintiff. The plea set up the defence, that the grievances were *bona fide* done by the defendant in the course of executing the powers conferred on it by this act and without any neglect, misconduct, &c., on its part otherwise than by its workmen or one of them, and that the workmen were well skilled and qualified and proper persons to be employed by them. It was held that the plea was no answer to the action.

In *Aldrich* v. *Tripp*, 11 R. I. 141 (23 Am. R. 434), a statute authorized the city of Providence to introduce water into the city and empowered the city to elect water-commissioners for a fixed term and for such subsequent terms, as the city might determine, to prescribe the duties and compensation of the commissioners and to regulate the mode and causes of their removal from office. The city owned the water-works, received rents for water and controlled the use and distribution of the water. In an action against the city for damages resulting from an unsafe highway, the damage being caused by a stream of water thrown from a city-hydrant across the highway by the employes of the water-commissioners, it was decided, that the water-commissioners and their employes were servants of the city, and that the city was responsible for their acts. Durfee, C. J., in delivering the opinion of the court after reviewing a number of cases, said: "These cases show that a city or town, where it is charged with a public duty in consideration of valuable privileges, is liable to indemnify an individual who suffers any special injury from a neglect of the duty; and that a city or town, which derives an emolument from the exercise of powers conferred upon it, is liable in like manner for the negligent or unskilful exercise of the powers by its agents or for the negligence of a duty, which is consequent upon having exercised them."

In *Oliver* v. *Worcester*, 102 Mass. 490 it appeared, that a building belonging to the city and used in part for municipal purposes but in considerable part also as a source of revenue by being let for rent, and situated on a public common crossed by foot-paths, which had been cared for by the city and used by the public for more than twenty years, the agents or servants of the city acting by its authority dug a hole in the ground adjoining and negligently left it open and unguarded, so that a person walking on one of the paths and using due care fell into the hole and was injured. It was held, that the city was liable for the injury.

In *Fisher* v. *Boston*, 104 Mass. 87 the action was tort for injury resulting to the plaintiff from the bursting of a hose attached to a fire-engine, while the fire-department was extinguishing a fire. The court held, that the city was not liable for a personal injury resulting from the negligence of officers and members of its fire-department in performing their duties, although the department was established and regulated under a special statute, which by its terms required acceptance by the city-council before it took effect.

In *Taintor* v. *Worcester*, 123 Mass. 311, the action was brought against the city to recover damages suffered by the destruction of the plaintiff's mill by an accidental fire in consequence of the neglect of the city to maintain a hydrant, by which the fire might have been extinguished. The court held the city not liable, on the ground that "the city did not by accepting the statute and building its works under it enter into any contract with or assume any liability to the owners of property to furnish means or water for the extinguishment of fires, upon which an action could be maintained." The claim was made, that the committee had agreed to furnish the water; but the court said, that the plaintiff could not maintain the action against the city, "upon an alleged agreement of the committee, because the authority to purchase the plaintiff's pipe did not authorize them to agree in behalf of the city to maintain a hydrant or to supply it with water, and there is no other evidence of any authority from the city to make such an agreement or of any knowledge on the part of the city, that such an agreement had been made."

In *Bailey* v. *Mayor, &c.*, 3 Hill 531, the action was case for

damages for injury to the plaintiff's land. The declaration avers, that the defendant "wrongfully, unjustly, ignorantly and unskilfully built and constructed across the said river (the Croton river) at a point above the said dam, &c., a certain dam, which by reason of the mere negligence, unskilfulness and carelessness of the defendants, their agents and servants in the construction and maintenance thereof and for no other cause afterwards &c. was swept away by the waters of said river, that had accumulated therein to the height of 150 feet beyond the usual and ordinary height of the same, &c., destroying the soil of twenty acres of the said land and diminishing and carrying away the plaintiff's dam, flume, sluices, mills, machinery, buildings, furniture, &c., &c." Nelson, judge, for the Supreme Court said :

"The argument of the defendants' counsel confounds the power in question with those belonging to the defendants in their character as a municipal or public body—such as are granted exclusively for public purposes to counties, cities, towns, and villages, when the corporations have, if I may so speak, no private estate or interest in the grant. As the powers in question have been conferred upon one of those public corporations, thus blending in a measure those conferred for private advantage and emolument with those already possessed for public purposes, there is some difficulty, I admit, in separating them in the mind, and properly distinguishing the one class from the other, so as to distribute the responsibility attaching to the exercise of each. But the distinction is quite clear and well settled, and the process of separation practicable. To this end regard should be had, not so much to the nature and character of the various powers conferred as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hoc* is to be regarded as a private company." A new trial was had pursuant to the decree of the Supreme Court and a heavy verdict rendered for plaintiff and judgment entered thereon. The judgment was taken on writ of

error to the Court of Errors of New York, and the President and Senators Folsom, Jones and Lott were for reversal; and the Chancellor and eighteen Senators were for affirming, and it was affirmed but on different grounds from those, on which the judgment of the Supreme Court was based. Of this case so often quoted by the courts as a leading case on the subject of the liability of municipal corporations, Denio C. J., speaking for the whole court in *Darlington* v. *Mayor*, &c., 31 N. Y. 200, said: "If this case of *Baily* v. *The Mayor* had vested, where it was left by the Supreme Court, though I should be obliged to acknowledge my inability to appreciate the distinction suggested between the public and private functions of the city-government, the judgment would have been entitled to a certain right or authority. But a new trial took place pursuant to the judgment of the Supreme Court, when the plaintiff recovered a very large verdict, and the case was presented to the court for the correction of errors, whose judgment of affirmance is reported in 2. Denio 433. The Chancellor and three Senators delivered written opinions in favor of affirmance, and the President of the Senate an opinion for reversal. None of the opinions even alluded to the ground taken in the opinion of the Supreme Court. It was considered by all the members, who delivered opinions for affirmance, that public corporations were responsible on account of their legal personality and their capacity for suing and being sued for the negligent acts of their agents and servants in the execution of their duties; and the main question, which was much discussed, was, whether the relation of principal and agent existed between the corporation and engineers and others who constructed the dam, seeing that the water-commissioners were appointed by the legislature. The Chancellor was unable to make out that relation and placed his opinion for affirmance on the ground, that every owner of land, who allowed others to erect nuisances thereon or suffered his premises to be in such a situation as to produce injury to others, is answerable for such injury; and as the city-corporation were the owners of the land, on which the dam was erected, he held they were liable upon that principle. Senator Hand considered the State as conducting the enterprise through the corporation,

and said, that a sovereign power, though it can not be sued, yet if it become a member of a corporation, lays aside its sovereignty as to that transaction or character. Senators Boker and Barlow considered, that the corporation by their acceptance of the act of the legislature constituted the water-commissioners their agents by adoption. The liability of the defendants being established by the court of ultimate review on an entirely different theory from that, which affirmed the enterprise of conveying water into the city to be a private work as distinguished from an act of municipal government, the doctrine of the opinion of the Supreme Court was substantially repudiated and can not therefore be considered as a precedent. It is but the opinion of the eminent Chief Justice and learned associates and does not like a final adjudication upon the cause of action settle any principle of law."

In *Hand* v. *Brookline*, 126 Mass. 324, it was held, that a town, which accepts a statute authorizing it to lay and maintain water-pipes for the purpose of supplying the inhabitants thereof with water at rates to be established by the town, is liable for an injury sustained by a traveller upon a street of the town, which street had been undermined by water escaping from the pipes by reason of negligence in their construction, although the circumstances are such, that no action lies for a defect in the highway under the statute. Gray, C. J., said in pronouncing the opinion of the court:

"The cause of action set forth in the count is not the omission to perform the duty imposed by general laws upon all cities and towns alike, of keeping the highways in repair, but it is the neglect in the construction of works which the town had been authorized by special statute, voluntarily accepted to construct, and to receive profits therefrom, just as a private corporation might. For a neglect in the manner of constructing such works by which injury is caused to person or property, a town is just as liable as a private corporation or an individual. If the water escaping from the aqueduct by reason of its negligent and imperfect construction had injured buildings or crosses, there could be no doubt of the right of the owner to recover damages against the town. The fact that the injury occasioned was within the limits of a

highway where the person injured had a lawful right to be affords no ground for exempting the town from liability."

It seems to me, there was no difficulty in placing the right to recover in that action and in *Bailey* v. *Mayor* and in the other cases, we have last reviewed, on a very much safer and more reasonable ground than any named; and that is, that where a municipal corporation is authorized by law to construct or carry on a work of internal improvement and in such construction or operation of the work through the negligence or carelessness of the officers or agents of the city any person is injured, the city is liable. The courts have often held, that, where the city or town is in the exercise of its purely governmental functions, as extinguishing fires, taking care of the sick, or protecting the citizens in their personal rights, or keeping the peace, the city is not liable for any injury done to a person through the negligence of agents or servants, by and through whom these powers are being exercised; but where the city is constructing a work of internal improvement, which in its discretion it may or may not construct, or having constructed may or may not abandon, any injury inflicted upon persons or property through negligence in the construction of such work or negligence in its operation, where the city is guilty of *misfeasance* in doing the work, it is liable in damages to the party injured. But I have found no case, where a city has been held liable for the *omission* to do a thing, which in its discretion it might do or omit to do. In the language of Chief Justice Marshall in *Fowle* v. *Alexandria*, 3 Pet. 398: "A legislative corporation established as a part of the government of the country is not liable for losses by a nonfeasance by an omission of the corporate body to observe a law of its own, in which no penalty is provided." None of the cases we have last cited, and none we have found, countenance the idea, that a municipal corporation is liable for losses caused by fire by not having water-works or by having imperfect works or by failing to keep the works or pipes in repair, when it was discretionary with the city to have water-works or not.

The case of *Sawyer* v. *Corse*, 17 Gratt. 241, is not opposed to the principles we have announced. The case is not relevant to the subject before us, as it involved the right to re-

cover damages from a mail-carrier for a package of money lost through his negligence.    He was properly held liable.

The case of *Cowley* v. *Sunderland*, 6 H. & N. 565, comes the nearest to a grant to a city to carry on strictly private business of any case cited or found; and yet it might be regarded as a means of protecting the health of its inhabitants; but the act complained of, and for which a recovery was permitted, was a *misfeasance.*    The city certainly could not have been held liable for *not operating* its bath and wash-houses. There the act of parliament (9 & 10 Vict.) authorized the town to erect bath and wash-houses, and charges for bathing and washing were collected by the town.    The town was held liable for an injury caused by the negligence of the officer having the machinery in charge.    The town was improperly doing that, which by law it was authorized to do. The reason given in *Aldrich* v. *Tripp*, 11 R. I. and *Hand* v. *Brookline*, 126 Mass., for holding the municipal corporation liable was, that it erected and operated its works for a profit to itself.    The idea seems to have been in the minds of these courts, that, unless the cities were to receive a profit for the use of their water-works, they would not be liable for the improper construction or improper use of the works.    They seemed to so hold in view of the fact, that it had often been decided, that a municipal corporation was not liable for injuries resulting from the negligence of its agents while discharging a purely governmental duty.    It seems to me, that as applied to a municipal corporation the idea of profit to be received by the corporation has nothing to do with its liability.    It receives no profits in the sense, that a private corporation does, from its operations.    In the case of a private corporation the profits received are divided among its stockholders.    After the payment of the debts of a private corporation every dollar of its earnings is at the disposal of the corporation to be distributed in dividends to its stockholders or re-invested for their individual benefit; not so with a municipal corporation, not one dollar of its earnings, after its expences and other debts are paid, can by any possibility accrue to the benefit of any private individual.    There is no stock and can therefore be no stockholders in a municipal corporation.    If any profits ac-

crue to it, they at once go to the benefit of the public.    *    *
If a city owns its water-works, it may pay its running ex-
penses and repairs by taxation, if it pleases, and furnish
water free to all who will comply with its regulations; or, as is
generally the case and is more just and equitable, it may
keep up its works and repairs by charging each individual at
a fixed rate for the water he uses; and if there is any surplus,
it is used in some other way for the benefit of the corpora-
tion to lessen the burdens of its citizens.    Whatever *profit*,
if it may be so called, it receives, the officers of the city
charged with municipal duties, among which are the man-
agement of its water-works, do not receive it or any part
thereof, but it goes to the benefit of the public.  It is not
properly speaking a *profit*, but it is a mode of taxation to
meet the burdens of the municipal government.    No case
has been cited, which shows, that the plaintiffs' action here can
be maintained.    On the contrary many cases have been cited,
which in principle decide, that a municipal corporation is not
responsible for damages for loss by fire, which was caused by
the negligence of the servants or agents of the city in charge
of the water-works and pipes under the city's control.

In the case of *Brinkmeyer* v. *Evansville*, 29 Ind. 187, the
action was brought to recover the value of a building de-
stroyed by fire.    The declaration averred, that the city pur-
chased sundry fire-engines and organized companies to ope-
rate the same, &c., and that by reason of the unskilfulness,
incompetency and negligence of the persons employed to
operate said engines, &c., and by reason of the engine and
hose being insufficient in number and inefficient, defective
and out of repair the plaintiff's property was destroyed.
Demurrer to the complaint was sustained, and on writ of
error the judgment was affirmed.    Elliot, judge, in deliver-
ing the opinion of the court, said :

" A municipal corporation is for the purposes of its crea-
tion a government possessing to a limited extent sovereign
powers, which in their nature are either legislative or judicial
and may be denominated governmental or public.    The ex-
tent, to which it may be proper to exercise such powers, as
well as the mode of that exercise by the corporation within
the limits prescribed by the law creating them is of neces-

sity intrusted to the judgment, discretion and will of the properly constituted authorities, to whom they are delegated. And being public and sovereign in their nature, the corporation is not liable to be sued either for a failure to exercise them or for error committed in their exercise. But when duties of a purely ministerial character are expressly enjoined by law on such corporation or arise by necessary implication, they are responsible for any damages resulting to individuals from a neglect to perform them or from their performance in an improper manner. * * Human skill and ingenuity are not competent always to resist the power of that destructive element, and the most that can be expected from the public authorities is the adoption of such means, as may be reasonably within their power, to guard, as far as they may, against such losses and aid in extinguishing such fires. They are all legislative or judicial in their nature, depending upon the wisdom and judgment of the common council, and can not be the subject of legal liability to individuals. * * Fire-departments have existed in cities for time out of mind, and there is not perhaps a city in existence in which the corporate authorities have not exercised the power to use all proper means for the prevention of losses by fire. It is an important branch of such municipal governments and has engaged their most earnest and serious consideration, and yet, notwithstanding the many millions of property annually destroyed in cities by fire, counsel have not referred us to a single authority for holding the corporation liable for such losses; and if any such exist, we are not aware of it. In our judgment both reason and the soundest public policy forbid that such a liability should be imposed."

In *Foster* v. *Water Company and Chatanooga,* 3 Lea 42, the plaintiff sued the city and water-company for the loss of his house by fire and averred in his declaration, that the water-company owned the water-works, pipes, &c., and that the city controlled the fire-department and was in duty bound to use all means at command to extinguish fires; that by contract with the city the company undertook to furnish water to extinguish fires; that a fire occurred near plaintiff's house and extended to and consumed it; that defendants at the time had suffered the water-pipes to get out of repair and

become full of gravel and mud, whereby the property of plaintiff was destroyed. It was held on demurrer, that the declaration showed no cause of action against either defendant. Cooper, J., in delivering the opinion of the Court of Appeals said:

"The inclination of the courts has been not to press the pecuniary liability of municipal corporations, which is distinctly recognized, when the duty is a corporate one, absolute and perfect, and owing to an injured party to cases where a duty is assumed, not for the corporate benefit but the common good. They have refused to hold a city liable for the acts of its police officers although they are appointed by it; or for the acts or negligence of its agents and employes in charge of patients in a public hospital; for misconduct of the members of its fire-department; or for the city's own neglect to provide suitable engines or fire-apparatus, or to keep in repair public cisterns or continue the supply of water to particular hydrants. * * The reason is that the hazzard of pecuniary loss might prevent the corporation from assuming duties, which although not strictly corporate nor essential to the corporate existence, largely subserve the public interest. The supplying water for the extinguishment of fires, is precisely one of those acts which bring no profit to the corporation, but are eminently humanitarian. To hold a city responsible for the loss of a building, or of a whole street of houses, as sometimes happens, because it might be thought, or because in reality some of its indispensable agents had been negligent of their duty, might well frighten our municipal corporations from assuming the startling risk. Be this as it may, the present case, as made by the declaration, falls under no class of recognized liability."

In *Black* v. *City of Columbia*, 19 South Ca. 412 (45 Am. R. 785) it is held in a case almost precisely like the case here, that the city was not liable. It was there decided, that a city was not liable to a citizen for the destruction of his house by fire owing to an inadequate supply of water, although it taxed him for water, and there was an understanding, that there should always be an adequate supply of water for extinguishing fires. In the declaration in that case among other things it was alleged: "Said defendant did assess

upon plaintiff's property an annual tax for the use of the said pipes and of the water to be furnished thereby to the plaintiff by the defendant for certain purposes among others in case of fire in or about the said premises and for the extinguishment thereof. That in consideration thereof, and with the understanding that the plaintiff was to be furnished with an ample supply of water by means of the said pipes and hydrants for the extinguishment of any fires that might occur as aforesaid, the said plaintiff did agree to pay and did pay to the said defendant the annual tax so assessed and imposed, &c." The demurrer to the count, that purported to set up a cause of action in its nature *ex delicto,* was sustained. One count the judge considered stated a contract or a cause of action in its nature *ex contractu.* The Supreme Court reversed the judgment of the court below and sustained the demurrer to the whole declaration. McGowan, judge, in delivering the opinion of the court said :

"If, as alleged, there was in this case a contract by the officers of the city insuring to the plaintiff an adequate supply of water at all times and under all circumstances, we incline to the opinion that it was a contract restricting the discretion of the municipality beyond the scope of the charter, and if actually proved would not support an action against the corporation. * * If we were at liberty notwithstanding our own decided cases expressed in general terms, without limitation or qualification to consider the modifications suggested to the general rule, we do not think that the *nonfeasance* complained of here can be properly said to be in reference to a power merely corporate in character, or that the duty imposed was merely ministerial. The system of water-works and its management required on the part of the city-authorities the exercise of discretion and judgment. The power was granted by law to a municipal corporation, and we do not see how it can be properly regarded as imposing a duty purely ministerial in its character."

This Court is asked to decide, that, because the city of Wheeling owned and operated its water-works and charged water-rent for the water used and actually received the rent, the law imposed a duty to have the water-pipes in good repair, and that the city is responsible for the loss by fire of

the plaintiffs' property through the negligence of the servants and agents of the city, who suffered the pipes to get out of repair, so that no water would flow into the plaintiffs' factory, where the fire occurred. From the facts averred in the declaration, as we have seen, no duty was laid on the city to keep the pipes in repair, from which the law would raise an obligation to pay damages to the plaintiffs for the loss sustained. The soundest public policy forbids, that a city should be liable in such a case. It is demanded by public policy and the well-being of society, that, where many people live near together, they should have a municipal government, one that can the better care for their wants, which are so different from the wants of those living in the country. The peace of the community needs more protection than can be given by the officers of the county; the health of the people must be looked after especially, or contagious and other diseases will destroy their lives. It is a well-known fact, that notwithstanding the best municipal regulations for the protection of the people against the ravages of disease, the mortality is much greater in cities than in the country. Among the most important municipal powers are those for the protection of property against fire; and notwithstanding all the care that a city may bestow upon this department of its municipal government many millions of property have been destroyed at a single fire, which may have got under headway by the negligence of some officer of the fire-department. To have held the cities of Chicago, Boston or Pittsburg responsible for the losses to property in their great fires would in each instance have bankrupted the city-government. Cities can not assume such fearful risks. If they should be compelled to do so, they could not exist. As we have seen, it makes no difference, that the fire-department is kept up by a charge for water. This is but a mode of municipal taxation for the purpose of carrying on the city-government.

There is in the declaration in the case before us no count that alleges a contract properly. No count seems to have been intended to declare on a contract either express or implied. From what we have seen in our examination of the authorities, there could be no implied contract from the facts set forth in the declaration. It is equally clear from both

reason and the authorities, that the officers of the city had no power to bind the city in any contract, that would compel the city to pay for property destroyed by fire in consequence of the negligence of the city-officers. In any view, that can be taken of the case, the declaration does not state a cause of action.

The judgment of the circuit court of Ohio county is affirmed.

AFFIRMED.