## HAYES vs. THE CITY OF OSHKOSH.

### *Liability of City.*

A city is *not liable* for the value of property destroyed by a fire which is caused by negligence in working a *steam fire engine* belonging to such city, said engine being engaged at the time in extinguishing a fire, and being under the control and management of engineers employed and paid by the city.

APPEAL from the Circuit Court for *Winnebago* County.

A stock of goods belonging to the plaintiff in the city of Oshkosh was damaged in consequence of the burning of the building in which they were contained, and in consequence of the throwing of water upon said building to extinguish the flames. At the time said building took fire, two steam fire engines belonging to the city were located near it, and firemen were operating them to extinguish a fire then burning in the barn of one Nelson Gill, in that neighborhood. The complaint alleges that the city was then in the possession and control of said engines; that they were employed by said city, and under the direction, charge and management of its servants, in extinguishing the fire in said barn; and that they were so carelessly

and negligently managed and operated, that large quantities of sparks, coals and cinders were allowed to escape from their smoke stacks, and fall upon the building in which plaintiff's goods were, and there remain without being wet or in any manner extinguished, until they set fire to said building and caused the damage aforesaid to plaintiff's goods, amounting to $5,000, for which judgment is demanded against said city.

The answer admitted that the city was the owner of the two steam fire engines mentioned in the complaint, and averred that at the time there named they were in the control of and used by firemen in said city to extinguish the fire in the barn of said Nelson Gill, and prevent the same from spreading in the city. The other averments of the complaint were denied.

Upon the trial, certain sections of defendant's charter (P. & L. Laws of 1868, ch. 501) were put in evidence, viz.: Ch. XI, sec. 1. "The common council shall procure fire engines and other apparatus used for the extinguishment of fires, and have charge and control of the same, * * * and shall have power to appoint a fire marshal, define his duties, fix his salary, and remove him at pleasure; to organize fire, hook, ladder and hose companies, and disband the same; to purchase horses and necessary apparatus and fuel for steam engines, and to provide for the appointment of a necessary number of competent persons to take the care and management of the steamers, engines, horses and other fire apparatus; to prescribe their duties, and to summarily remove such persons at the pleasure of the common council; to prescribe the duties of firemen, and their compensation, and to make rules and regulations for their government, and to impose reasonable fines and forfeitures upon them for a violation of the same. * * *." Ch. V, sec. 7. "The fire marshal shall in all cases have control of the different fire companies of the city, their engines, steamers and fire apparatus, and also the direction and control thereof when called out on duty, subject only to the control of the common council;" etc.

It appeared from the evidence that at the time mentioned in the complaint there was no fire marshal in said city, but that there was a " chief engineer of the fire department," and an engineer of each of said two steam fire engines, and that all these officers were employed and ' paid as such by the common council of said city. The chief engineer testified that the two engines were under his direction and control at the time of the fire. It appeared also that sparks, coals and cinders in large numbers were carried by the wind from the smoke stacks of said engines, and fell upon the building in which plaintiff's goods were; and that plaintiff and others made exertions to extinguish the same. Plaintiff's evidence also tended to show that the officers in charge of the engines were aware of the fact that such sparks, etc., had fallen upon said building, endangering the same ; that they were requested in plaintiff's behalf to wet down the roof of the building; that the chief engineer promised to do so before the engines should leave the ground ; that it was not done; and that in consequence of this neglect said building was destroyed by fire.

After defendant's evidence was in, the jury, by direction of the judge, brought in a verdict for the defendant. From a judgment on such verdict, the plaintiff appealed.

*C. Coolbaugh & Son*, for appellant, to the point that a *private* corporation would have been liable under similar circumstances, cited *Teall v. Barton*, 40 Barb., 137 ; *Hinds v. Barton*, 25 N. Y., 544 ; *Webb v. R. R. Co.*, 49 id., 420 ; *Fero v. R. R. Co.*, 22 id., 209 ; *Rolke v. Railway Co.*; 26 Wis., 538 ; *Kellogg v. Railway Co.*, id., 223. As to the general rule of law applicable to municipal corporations in such cases, they cited Dillon's Mun. Corp., 723, 730 ; Shearm. & Redf. on Neg., 137. They further contended that under the charter of the defendant there could be no doubt that the chief of the fire department and the engineers are *servants or agents of the city.* As to the question whether the duty imposed upon such engineers was one which concerned the state at large, or one which was for the peculiar

benefit of the inhabitants of the city, they cited especially the dissenting opinion of BUTLER, C. J., in *Jewett v. New Haven*, 38 Conn., 380; and also *Brinkmeyer v. Evansville*, 29 Ind., 187; *Eastman v. Meredith*, 36 N. H., 284; Tay. Stats., 1015, § 106. They further contended that a public corporation has no more right to use its *property* so as to damage private individuals than has a private corporation, citing Dillon's Mun. Corp., 780; *Brinkmeyer v. Evansville*, and *Eastman v. Meredith, supra; Bailey v. Mayor, etc.*, 3 Hill, 541; *Rhodes v. Cleveland*, 10 Ohio, 159; *Rochester White Lead Co. v. Rochester*, 3 N. Y., 463; *Savannah v. Cullens*, 38 Ga., 334; *Jones v. New Haven*, 34 Conn., 1.

*W. R. Kennedy*, City Attorney (with *Gabe Bouck*, of counsel), contended that the law is well settled, that when a municipal corporation elects or appoints an officer in obedience to or by authority of an act of the legislature, to perform a public service in which such corporation has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed for the general welfare of the inhabitants, or of the community, such officer cannot be regarded as a servant or agent for whose negligence or want of skill in the performance of his duties the city will be liable. Dillon's Mun. Corp., §§ 39, 754, 758–760, 773–776; *Hafford v. New Bedford*, 16 Gray, 297; *Jewett v. New Haven*, 38 Conn., 368; *Torbush v. Norwich*, id., 225; *Fisher v. Boston*, 104 Mass., 87; *Buttrick v. Lowell*, 1 Allen, 172; *Small v. Danville*, 51 Me., 359; *Mitchell v. Rockland*, 52 id., 118; *Underhill v. Manchester*, 45 N. H., 214; *Painter v. Pittsburgh*, 46 Pa. St., 213; *Elliott v. Philadelphia*, 7 Phil. R., 128; *Wheeler v. Cincinnati*, 19 Ohio St., 19; *Western College v. Cleveland*, 12 id., 375; *Detroit v. Corey*, 9 Mich., 165–184; *Brinkmeyer v. Evansville*, 29 Ind., 187; *Harrison v. Baltimore*, 1 Gill, 264; *Baltimore v. Poultney*, 25 Md., 107; *Richmond v. Long*, 17 Gratt., 375; *White v. Charleston*, 2 Hill (S. C.), 571; *Dargan v. Mobile*, 31 Ala., 469; *Stewart v. New Orleans*, 9 La. Ann., 461; *Lewis v. New Orleans*, 12 id., 190; *Wilde v. New Orleans*, 24

id., 15; *Fauvia v. New Orleans*, 20 id., 410; *Howe v. New Orleans*, 12 id., 481; *Prather v. Lexington*, 13 B. Mon., 559; *Patch v. Covington*, 17 id., 722; *Ward v. Louisville*, 16 id., 184; *Cheaney v. Hooser*, 9 id., 330; *Murtaugh v. St. Louis*, 44 Mo., 479; *McDonald v. Redwing*, 13 Minn., 38; *Sherbourne v. Yuba Co.*, 21 Cal., 113; *Weber v. San Francisco*, 1 id., 455.

DIXON, C. J.   The question presented in this case is settled by authority as fully and conclusively as any of a judicial nature can ever be said to have been.   The precise question may not have been heretofore decided by this court, but a very similar one has, and the governing principle recognized and affirmed.   *Kelley v. Milwaukee*, 18 Wis., 83.   Neither the charter of the city of Oshkosh, nor the general statutes of this state, contain any peculiar provision imposing liability in cases of this kind; and the decisions elsewhere are numerous and uniform, that no such liability exists on the part of the city.   The case made by the plaintiff is in no material respect distinguishable from those adjudicated in *Hafford v. New Bedford*, 16 Gray, 297, and *Fisher v. Boston*, 104 Mass., 87, as well as in several other reported decisions cited in the briefs of counsel, and in all of which it was held that the actions could not be maintained.

The grounds of exemption from liability, as stated in the authorities last named, are, that the corporation is engaged in the performance of a public service, in which it has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants, or of the community; that the members of the fire department, although appointed by the city corporation, are not, when acting in the discharge of their duties, servants or agents in the employment of the city, for whose conduct the city can be held liable; but they act rather as public officers, or officers of the city charged with a public service, for whose negligence or misconduct in the discharge of

official duty no action will lie against the city, unless expressly given; and hence the maxim *respondeat superior* has no application.

The reasons thus given are satisfactory to our minds, and lead to a conclusion which on the whole seems to us to be just and proper. Individual hardship or loss must sometimes be endured in order that still greater hardship or loss to the public at large or the community may be averted. It would seem to be a hard rule which would hold the city responsible in damages in such cases, when the work in which it, or rather its public officers are engaged, is one of mere good will, a charity, so to speak, designed for the relief of suffering members of the community, or it may be of the entire people of the district. If the legislature sees fit to enact such liability, so let it be; but, in the absence of such enactment, we must hold the liability does not exist.

*By the Court.* — Judgment affirmed.