## SARAH E. TAINTER *vs.* CITY OF WORCESTER.

Worcester.   October 6. — 30, 1877.   ENDICOTT & LORD, JJ., absent.

A city, by accepting a statute authorizing it to make and maintain reservoirs and public hydrants " in such places as may be deemed proper," and building its works under it, is not liable to an owner of property destroyed by fire by reason of its neglect in cutting off the water from a hydrant, but for which the fire might have been extinguished.

The owner of a building failed to pay water-rates for water supplied to his building by a city, and the city cut off the water from the building and from a hydrant in a street near by, although the water might have been cut off from the building alone. The building was destroyed by a fire, which might have been extinguished, had there been water in the hydrant.   *Held,* that the owner of the building could not maintain an action against the city for the loss.

Authority given by a city council to a committee thereof, on a petition for a hydrant to be attached to a certain line of pipes, to purchase the pipes, does not authorize the committee to agree in behalf of the city to maintain the hydrant.

CONTRACT, with counts in tort, for injuries sustained by the destruction of the plaintiff's mill by fire. Trial in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff put in evidence tending to show that she was the owner of a certain mill in the city of Worcester, which was destroyed by fire on June 17, 1874; that the fire, when first discovered, could have been extinguished, without the mill receiving material injury, if there had been water in a certain hydrant in a street near the premises; and that the loss occurred by reason of this absence of water.

The plaintiff also put in evidence tending to show that the defendant had accepted the St. of 1864, c. 104, authorizing the introduction of water into the city; and had, under the authority of the same, introduced water and laid pipes through the streets of the city, and adopted certain ordinances, the material parts of which are stated in the margin; * that the plaintiff, by

---

* Chapter 56, Section 2. "He [the water commissioner] shall clear all hydrants of snow after each snow-storm, and be vigilant and watchful in keeping them at all times in complete working order, and free from obstruction to their ready use, and shall also see that all gates and other fixtures are properly protected from injury and kept in working order."

Section 4. "He shall not shut off water from any line of water-pipe or service except by an order from the committee on water, or city engineer, or in case of a burst or leak in a distributing or service pipe."

Section 6. "All service pipe and its appendages, laid in the highways, shall be furnished and maintained at the expense of the city."

Section 11. "The water commissioner or his agent shall have access at all times to all premises where water is used, for the inspection of the condition of the fixtures, or setting, using or repairing meters, and also for cutting off the water from any delinquent taker by closing any faucet or cutting any pipe or pipes necessary to effect the object desired."

Section 14. "If the bills for water are not paid on or before the tenth day of May by any person taking water, or any bills for service pipe or other materials and labor furnished any taker or other person by the department, remaining unpaid for forty days, after notice from the city treasurer that the said bill is in his office and ready for payment, five per cent. per month shall be added to said bill for cost of collection, or for any violation of this ordinance, shall render said delinquent or violator liable to have the water shut off from his premises upon order from the committee on water, in which case the water will not be turned on again until all bills are paid, and, in addition thereto, two dollars for the expense of shutting off and letting on the water."

her agent, Daniel Tainter, applied by petition to the city coun-
cil to put in the hydrant, above referred to, to be used for ex-
tinguishing fires, which petition was referred by a vote of the
council to the committee on water, on April 12, 1869, and the
committee on September 16 following made the following re-
port : " On petition of Daniel Tainter to be furnished water for
his new mill on Gardner Street, the committee report that the
pipe was laid in said street in 1864 by the Adriatic Mill Com-
pany, and that it is important for the purposes of Mr. Tainter
and other parties wanting water upon this line that the city
should own the pipe laid by this company ; " that it was there-
upon ordered by vote of the council that the committee on water
" be authorized to purchase the pipe laid by the Adriatic Mill
from Main Street to Southgate Street," which is the pipe to
which the hydrant is attached ; that in pursuance of this au-
thority, the committee purchased the pipe for the city and ver-
bally agreed with the plaintiff to put in the hydrant and connect
the same with the aqueduct and keep the same supplied with
water for the purpose of extinguishing fires, the same to remain
under the control of the city for public use, provided the plain-
tiff would pay for the same ; that the hydrant was put in by the
committee and connected with the pipe, and the plaintiff paid
therefor between \$200 and \$300; that the plaintiff also at her
own expense put water-pipes into her building, and, with the
consent of the committee, connected them with the pipes pass-
ing through the hydrant ; that, the plaintiff having failed to pay
water-rates for the use of the water on her premises, the water
was cut off on May 23, 1874, as provided in the city ordinances,
from the hydrant and the pipes in her building, by order of the
committee on water; that the fire occurred while the water of
that year was so cut off; that the plaintiff had never paid her
water-rates due at the time the water was so cut off ; that the
pipes were so arranged that the water could have been conven-
iently cut off from the pipes in the building without cutting it
off from the hydrant; and that there was an abundant supply
of water in the pipe, to which the hydrant was attached, at the
time of the cutting off and also at the time of the fire, and there
was no reason for not supplying water to the hydrant, except
that the plaintiff had failed to pay her water-rates, which water-

rates were for water supplied for the ordinary uses of the plaintiff's mill, and not for water supplied to the hydrant.

Upon the foregoing evidence the plaintiff contended that the jury would be authorized to infer an agreement by the defendant to maintain a reasonable supply of water to the hydrant for protection against fire, and also that she would be entitled to recover independently of any such agreement.

The judge ruled that the action could not be maintained. The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*G. F. Hoar & G. F. Verry*, for the plaintiff.   1. The defendant was authorized, by the St. of 1864, *c.* 104, to bring water into the city, and to "make and maintain public hydrants." The powers granted by the act were, by § 4, to be exercised "by such officers, servants and agents, as the city council shall from time to time ordain, appoint and direct."   By the St. of 1866, *c.* 199, § 15, the city council is required to elect annually a water commissioner.   His duties are defined by *c.* 56 of the city ordinances, and among them is that of keeping the hydrants "at all times in complete working order, and free from obstruction to their ready use."   If a bill for water is not paid, the water may be shut off from the premises of the delinquent by the water commissioner or his agent, to whom access to the premises is given, "by closing any faucet or cutting any pipe or pipes necessary to effect the object desired."   §§ 11, 14.

Independently of the agreement which the city made with the plaintiff and violated, the defendant is liable.   Having elected to avail itself of the right to make and maintain public hydrants, the city was acting as a corporate legal individual and not as a municipal government, and is responsible for any damage occasioned by a careless, negligent or improper execution of it.   *Lancaster Canal Co.* v. *Parnaby*, 3 Per. & Dav. 162.   *Atkinson* v. *Newcastle Waterworks*, L. R. 6 Ex. 404.   *Child* v. *Boston*, 4 Allen, 41, 52.   *Oliver* v. *Worcester*, 102 Mass. 489.   *Emery* v. *Lowell*, 104 Mass. 13.   *Young* v. *Boston*, 104 Mass. 95.   *Metallic Compression Co.* v. *Fitchburg Railroad*, 109 Mass. 277.   *Bailey* v. *Mayor &c. of New York*, 3 Hill, 531.   *Mayor &c. of New York* v. *Furze*, 3 Hill, 612, 615.   *Lloyd* v. *Mayor &c. of New York*, 1 Seld. 369.   *Barton* v. *Syracuse*, 36 N. Y. 54.   *McCarthy* v. *Syra-*

*cuse*, 46 N. Y. 194. *Jones* v. *New Haven*, 34 Conn. 1, 14. *Pitts-burgh* v. *Grier*, 22 Penn. St. 54. *Logansport* v. *Wright*, 25 Ind. 512. 2 Dillon Mun. Corp. (2d ed.) §§ 778, 802.

The defendant, in the management of the waterworks, although clothed with a public authority, was engaged in a business for its own profit and gain, and is liable for its contracts and torts, as a private person would be under like circumstances. It is not contended that the defendant would be liable for a failure to exercise, or for a failure committed in the exercise of, those powers, which may be denominated governmental or public; and it may be conceded that decrees establishing hydrants are in the exercise of discretionary and legislative power; but the methods and manner of their management, after they are established, the neglect to keep them in working order, the shutting off the water from them so as to render them useless, are all ministerial duties, the failure to perform which, or their performance in a negligent and improper manner, will render the city liable. These duties must be performed by agents or servants, and the doctrine of *respondeat superior* applies. Suppose the water commissioner, in cutting off the water, had negligently performed this duty, and had flooded a house with water, or had with his lanterns set fire to a house, would not the city have been liable? See *Danbury & Norwalk Railroad* v. *Norwalk*, 37 Conn. 109, 119.

2. The supply of water to the hydrant was cut off for the neglect of the plaintiff to pay the water-rates assessed, not for the use of the hydrant, but for the use of the mill. The defendant had a right to cut off the water from the mill, but not from the hydrant.

3. The plaintiff is also entitled to recover by virtue of her contract made with the defendant, through its agent, the committee on water. This contract was made for a valuable consideration, and the committee agreed that the hydrant should be kept for public use, and should be supplied with water for the extinguishment of fires. It was clearly within the province of the committee to provide hydrants for public or private use. The agreement to keep the hydrant supplied with water was as much within the committee's power, as an agreement to supply water to a house or mill for domestic or mechanical purposes.

The city has accepted the benefits of the contract, by having the hydrant for the use of the public, and by receiving pay for its construction, and has thereby ratified the acts of its agents. *United States Bank* v. *Planters' Bank*, 9 Wheat. 904. *Peterson* v. *Mayor &c. of New York*, 17 N. Y. 449. *Hayden* v. *Madison*, 7 Greenl. 76, 79. *Abbot* v. *Hermon*, 7 Greenl. 118.

*T. L. Nelson & F. T. Blackmer*, for the defendant.

GRAY, C. J. This action is brought against the city of Worcester to recover damages suffered by the destruction of the plaintiff's mill by an accidental fire in consequence of the neglect of the city to maintain a hydrant by which the fire might have been extinguished. The declaration is in several counts, and no objection is made to its form, provided the plaintiff is entitled to maintain any action against the city upon the evidence stated in the bill of exceptions.

The protection of all the buildings in a city or town from destruction or injury by fire is for the benefit of all the inhabitants and for their relief from a common danger; and cities and towns are therefore authorized by general laws to provide and maintain fire engines, reservoirs and hydrants to supply water for the extinguishment of fires. *Allen* v. *Taunton*, 19 Pick. 485. *Hardy* v. *Waltham*, 3 Met. 163. *Fisher* v. *Boston*, 104 Mass. 87, 93. The Worcester Water Act, St. 1864, c. 104, § 3, authorizes the city to make and maintain reservoirs and public hydrants "in such places as may be deemed proper." This evidently means "as may be deemed proper by the city or its officers or agents" — just as the St. 1867, c. 158, authorizes the selectmen of towns, for the protection of persons and property therein against fire, to order conductors to be put into the pipes of aqueduct corporations, for the purpose of attaching hydrants or conducting water into reservoirs, and in such places as the engineers of the fire department shall think necessary. The works to be constructed by the city of Worcester, under the St. of 1864, were, so far as related to safeguards against fire, to be erected and maintained by the city for the benefit of the public and without pecuniary compensation or emolument. The questions whether and where public hydrants should be erected were within the exclusive discretion and control of the municipal authorities, as the public interest might seem to them from time

to time to require. The city did not, by accepting the statute and building its works under it, enter into any contract with, or assume any liability to, the owners of property to furnish means or water for the extinguishment of fires, upon which an action can be maintained. *Grant* v. *Erie*, 69 Penn. St. 420. *Wheeler* v. *Cincinnati*, 19 Ohio St. 19. *Brinkmeyer* v. *Evansville*, 29 Ind. 187. *Fisher* v. *Boston, ubi supra.* *Hill* v. *Boston*, 122 Mass. 344.

The judgment of the Court of Exchequer in *Atkinson* v. *Newcastle Waterworks*, L. R. 6 Ex. 404, much relied on by the plaintiff, in which an action was maintained against a water company for not keeping pipes, in which fire plugs were fixed, charged with water at a certain pressure, as required by its act of incorporation, whereby the plaintiff's property was destroyed, has been reversed in the Court of Appeal, by Lord Chancellor Cairns, Chief Justice Cockburn and Lord Justice Brett. 2 Ex. D. 441. In *Metallic Compression Co.* v. *Fitchburg Railroad*, 109 Mass. 277, the action was not against the city for neglect to furnish proper means to extinguish fires, but against a third party for unlawfully cutting a hose while actually being used to put out a fire; and the decision of the Court of Exchequer in *Atkinson* v. *Newcastle Waterworks* was cited only to the point that the act of the defendant was the direct and efficient cause of the injury.

For the reasons already stated, the plaintiff has no right of action against the city, by reason of any duty imposed or liability assumed under the St. of 1864, for neglecting to maintain the hydrant, or for cutting off its supply of water. And she cannot sue the city upon the alleged agreement of the committee, because the authority to purchase the plaintiff's pipe did not authorize them to agree in behalf of the city to maintain a hydrant, or to supply it with water, and there is no other evidence of any authority from the city to make such an agreement, or of any knowledge on the part of the city that such an agreement had been made. *Palmer* v. *Haverhill*, 98 Mass. 487.

*Exceptions overruled.*