METROPOLITAN TRUST CO. v. TOPEKA WATER CO. et al.

(Circuit Court, D. Kansas, First Division. September 10, 1904.)

No. 8,156.

1. WATER COMPANIES—LIABILITY TO OWNER OF PROPERTY DESTROYED BY FIRE—VIOLATION OF CONTRACT WITH CITY.

A water company or its receiver cannot be held liable in damages to a resident of a city, who was the owner of property therein destroyed by fire, on account of the failure to fulfill a contract with the city by which the company bound itself to furnish an adequate supply of water for the extinguishment of fires and a stipulated pressure.

2. STATUTE OF FRAUDS—AGREEMENTS WHICH CANNOT BE PERFORMED WITHIN ONE YEAR.

Oral contracts between the receiver of a water company and the owner of a building and his tenant, by which the receiver, in consideration of the erection of a standpipe by the owner of the building and the payment of $50 per year in addition to meter rates by the tenant, agreed to "supply and furnish such standpipe at all times with a full, adequate, and sufficient supply of water, with sufficient pressure at all times for use in the extinguishment of fires," are contracts which cannot be fully performed within a year, and are within the statute of frauds of Kansas.

In Equity. On demurrers to intervening petitions.

Mulvane & Gault, Barger & Hicks, Loomis, Blair & Scandrett, W. F. Schoch, Gleed, Ware & Gleed, and Quinton & Quinton, for intervening petitioners.

Rossington, Smith & West and John W. Newell, for complainants and defendants.

POLLOCK, District Judge. A decree has been entered in this suit directing a sale of the waterworks property involved to satisfy liens thereon. The sale has been made and reported to the court. During the pendency of the suit J. W. O'Neill was appointed receiver, who took charge of and has been operating the waterworks involved. During this receivership fires have occurred in the city of Topeka, causing large damage to owners of property destroyed by such fires. It is claimed by the intervening petitioners, and so charged, that these fires resulted solely on account of the failure of the receiver of the water company to operate the works in compliance with the terms, conditions, and requirements of Ordinance No. 400 of the city of Topeka, under which the waterworks were constructed and operated, which ordinance, together with the acceptance thereof by the water company, constitutes the contract existing between the city and the water company. This ordinance, among other things, provides as follows:

¶ 1. See Waters and Water Courses, vol. 48, Cent. Dig. § 301.

"Sec. 10. Said company binds itself during the continuance of the contract which may be made under this ordinance to furnish at all times, for public and private use of said city and inhabitants thereof, a full and sufficient supply of good, clear, healthful, and wholesome water, well suited for domestic and manufacturing purposes."

"Sec. 15. The following shall be the test of the capacity of the works: To discharge ten one-inch streams at the same time from any ten hydrants on the distribution pipes, with fifty feet of hose attached, to the height of one hundred feet, or maintain its equivalent in pressure at the nozzle or hydrant.

"Sec. 16. Any failure on the part of said company to comply with any of the provisions of this ordinance, either as to the amount of water or the quality of the same, or any failure to furnish sufficient supply of water at all times, excepting in case of unavoidable accident, said company shall forfeit its franchise, and this charter shall be null and void."

For the purpose of ascertaining the amount and testing the legality of such claims against the receiver of the water company, and the priority of such claims over the mortgagee's liens upon the property, if such claims are found to be valid in law, the claimants have been permitted to file intervening petitions in this suit. The foreclosure decree contains the usual provision for payment of all such claims found to be prior in right to the mortgagee's liens out of the proceeds of the property sold, and the right to retake and resell the waterworks property if such payment be not made. The matter is now before the court for decision upon separate demurrers leveled against the intervening petitions.

The claim of liability against the receiver is twofold: First, the general claim of liability made by all the intervening petitioners, based upon the failure of the receiver to furnish water in such quantity and with such pressure as required by the terms of the ordinance above quoted; second, liability of the receiver to intervening petitioners Mulvane and the Parkhurst-Davis Mercantile Company for failure to furnish water in accordance with the terms of a special oral contract therein pleaded.

The question of the liability of a water company to respond in damages to a resident of a city, the owner of property destroyed by fire, on account of the failure of the water company to fulfill its contract with the city in furnishing an adequate supply of water and a stipulated pressure for the extinguishment of fires, has many times received the consideration of the courts of last resort in this country, and the almost universal holding is that there is no such privity of contract between the individual citizen, though a taxpayer who contributes to the fund disbursed by the city in the payment of hydrant rentals, and the water company, as will authorize any recovery for damages so sustained. Boston Safe Deposit & Trust Co. v. Salem Water Co. (C. C.) 94 Fed. 238; Mott v. Manufacturing Co., 48 Kan. 12, 28 Pac. 989, 15 L. R. A. 375, 30 Am. St. Rep. 267; Davis v. Waterworks Co., 54 Iowa, 59, 6 N. W. 126, 37 Am. Rep. 185; Becker v. Waterworks, 79 Iowa, 419, 44 N. W. 694, 18 Am. St. Rep. 377; Britton v. Waterworks Co., 81 Wis. 48, 51 N. W. 84, 29 Am. St. Rep. 856; Hayes v. City of Oshkosh, 33 Wis. 314, 14 Am. Rep. 760; Nickerson v. Hydraulic Co., 46 Conn. 24, 33 Am. Rep. 1; Eaton v. Waterworks Co., 37 Neb. 546, 56 N. W. 201, 21 L. R. A. 653, 40 Am. St. Rep. 510; Beck v. Water Company (Pa.) 11 Atl. 300; Phœnix Ins. Co. v. Trenton Water Co., 42 Mo. App. 118; Howsmon v. Water Company, 119 Mo. 304, 24 S. W.

784, 23 L. R. A. 146, 41 Am. St. Rep. 654; Fitch v. Water Co. (Ind. Sup.) 37 N. E. 982, 47 Am. St. Rep. 258; Foster v. Water Co., 3 Lea, 42; Ferris v. Water Co., 16 Nev. 44, 40 Am. Rep. 485; Fowler v. Waterworks Co., 83 Ga. 219, 9 S. E. 673, 20 Am. St. Rep. 313; Bush v. Water Co. (Idaho) 43 Pac. 69; Wainwright v. Water Co., 78 Hun, 146, 28 N. Y. Supp. 987; House v. Waterworks Co. (Tex. Sup.) 31 S. W. 179, 28 L. R. A. 532; Waterworks Co. v. Brownless, 10 Ohio Cir. Ct. R. 620.

The same conclusion has been reached by the Supreme Court of this state in a case where the water company, by virtue of the terms of its contract with the city, expressly agreed it should be liable for such damages. Mott v. Manufacturing Co., supra.

It has been universally held that a city owning its own waterworks cannot be held liable in an action for damages for failure to furnish sufficient water supply to extinguish fire. 2 Dill. Mun. Corp. 975; Fowler v. Waterworks Co., 83 Ga. 222, 9 S. E. 673, 20 Am. St. Rep. 313; Wainwright v. Water Co., 78 Hun, 146, 28 N. Y. Supp. 987; Tainter v. City of Worcester, 123 Mass. 311, 25 Am. Rep. 90; Vanhorn v. City of Des Moines, 63 Iowa, 447, 19 N. W. 293, 50 Am. Rep. 750; Hayes v. City of Oshkosh, 33 Wis. 314, 14 Am. Rep. 760; Mendel v. Wheeling, 28 W. Va. 233, 57 Am. Rep. 665; Wheeler v. Cincinnati, 19 Ohio St. 19, 2 Am. Rep. 368; Black v. Columbia, 19 S. C. 412, 45 Am. Rep. 785; Sievers v. San Francisco, 115 Cal. 654, 47 Pac. 687, 56 Am. St. Rep. 153; Ukiah v. Ukiah Water Co. (Cal.) 75 Pac. 773, 64 L. R. A. 231. A different rule of liability has been laid down in Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536, and Gorrell v. Greensboro Water Co. (N. C.) 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598, and perhaps other cases, which cases are not wanting in plausibility of argument for their support.

However, the exact question has so often received the consideration of courts of the highest standing throughout the country, and the conclusion reached has been so uniformly against the liability contended for by the intervening petitioners, that the doctrine of nonliability in such case must be received as the settled law. A city contracting for a supply of water acts in its private, as contradistinguished from its public or governmental, capacity, and as there is in this case no privity of contract between the water company or receiver thereof and the city, liability of the receiver may not be predicated upon any contract right, and as no duty rested upon the water company to furnish to the individual owner an adequate supply of water, with sufficient pressure to extinguish fires, as stipulated in its contract with the city, in the absence of such duty no liability can be predicated upon its negligent failure to comply with such contract. It follows the demurrers to the intervening petitions, in so far as they are founded upon the general liability of the receiver, claimed to exist by virtue of the contract existing between the city and the water company, or any duty imposed by such contract, are sustained, and the intervening petitions based thereon are dismissed.

The intervening petitioners Joab Mulvane and the Parkhurst-Davis Mercantile Company make the further claim that during the month of

July, 1902, the one desiring more adequate protection ·from loss by fire of his building than that afforded by the terms of the contract existing between the city and the water company, and the other desiring such additional protection for its stock of merchandise contained in such building, entered into an oral contract with the receiver of the water company, by the terms of which oral contract, as pleaded in the intervening petitions, the receiver agreed with petitioner Mulvane in the one case:

"That if your petitioner would construct a standpipe in said building at his own expense, and would pay or cause his tenant to pay said receiver the sum of fifty ($50) dollars per annum in addition to the regular meter rates, that he, the said receiver, would supply and furnish such standpipe at all times with a full, adequate, and sufficient supply of water, with sufficient pressure at all times for use in the extinguishment of fires, and of the same pressure as it was agreed should be furnished the city of Topeka and its inhabitants by the terms of the ordinance above mentioned."

And also agreed with the intervening petitioner the Parkhurst-Davis Mercantile Company as follows:

"For and in consideration of the payment by your petitioner to said receiver of the sum of fifty dollars per annum in addition to the regular meter rates charged, agrees and undertakes to supply and furnish your petitioner with a full, adequate, and sufficient supply of water of sufficient pressure for fire extinguishment purposes, and of the same pressure as that which it was agreed should be furnished the city of Topeka and the citizens thereof by the ordinance above referred to."

Against the claim of intervening petitioners for damages for the breach of this oral contract so pleaded but one objection is presented or raised by the demurrer, namely, that the contract falls within the statute against frauds and perjuries, and is therefore void and nonenforceable. Is the objection well taken? In this state we have re-enacted the English statute of 29 Car. II, c. 3, § 4, which has been in substance or exact language re-enacted by the several states of this Union. This act was many times construed by the English courts of last resort prior to its re-enactment in this country, and has often received the consideration of the courts of this country. To such an extent is this true that the precise construction to be placed upon the act is no longer an open question. In the leading case of Warner v. Texas & Pacific Railway, 164 U. S. 418, 17 Sup. Ct. 147, 41 L. Ed. 495, Mr. Justice Gray, delivering the opinion in a case which arose under the statute of Texas, declares this clause of the statute of frauds—

"Applies only to agreements which, according to the intention of all parties, as shown by the terms of their contract, cannot be fully performed within a year, and not to an agreement which may be fully performed within the year, although the time of performance is uncertain, and may probably extend, and may have been expected by the parties to extend, and does in fact extend, beyond the year."

The oral contract under consideration in that case, and which was held by the court not to come within the condemnation of the statute, was between the railroad company and the owner of a mill, by which it was agreed that, if the owner of the mill would furnish the ties and grade the ground for a switch opposite his mill, the company would put down the iron rails and maintain the switch for the benefit of the mill owner for shipping purposes as long as the mill owner should need it.

132 F.—45

The contract was made in 1874 and the action was brought for its breach in 1892.

Adopting and applying the construction of the act as here declared as the true rule of construction, does the oral contract pleaded in the intervening petition fall within the terms of the act? Manifestly the solution of this problem must depend upon the exact language in which the oral contract is couched; for if upon any contingency the contract pleaded might have been fully performed within one year from the date of its making, it will not be held within the statute, although it was' not so performed, and although it may be seen therefrom it was not in contemplation of the parties that it should be so performed within one year.

The exact language of the contract pleaded is, in consideration of the erection of a standpipe and the payment of the sum of $50 per annum in the one case by the owner of the building, and the payment of $50 in the other case by the mercantile company, the receiver agreed to do what? Supply said standpipe with water so long as the owner of the building might desire? Or might live?. Or might own the building? Or so long as the mercantile company might transact business in the building, or other contingency? No. "That he, the said receiver, would supply and furnish such standpipe at all times with a full, adequate, and sufficient supply of water, with sufficient pressure at all times for use in the extinguishment of fire, and of the pressure as it was agreed should be furnished the city of Topeka and its inhabitants by the terms of the ordinance above mentioned." Obviously, and of necessity, a permanent engagement was made, and this permanent agreement in legal contemplation is precisely such an agreement as was considered by Chancellor Walworth in Pitkin v. Long Island Railroad, 2 Barb. Ch. 221, 47 Am. Dec. 320, reviewed by Mr. Justice Gray in Warner v. Texas & Pacific Railroad, supra, and commented upon with approval. It follows the oral agreement made between the receiver of the water company and the intervening petitioners, Mulvane and the Mercantile Company, is within the statute of frauds, void, and nonenforceable.

The demurrers to the special contracts, as pleaded therein, must be and are sustained.