GREENVILLE WATER COMPANY V. SAM A. BECKHAM.

Decided April 3, 1909.

**1.—Fire—Water Company—Contract with City—Failure to Furnish Water—Liability.**

A property owner cannot hold a water company liable for loss of his property by fire because of its breach of its contract with the city to supply water for fire purposes. That the city in question is incorporated under the general law (Revised Statutes, art. 418), and the contract with the city is to supply the city "and the inhabitants thereof," does not affect the question.

**2.—City—Contract—Implied Contract—Loss by Fire—Water Company—Liability—Case Followed.**

A contract between a city and a water company stipulating that the latter should be liable, under its contract to furnish water to the city and the inhabitants for fire and other purposes, to individual citizens for loss of property sustained by reason of its breach of the contract, would be void; and it follows that no such implied liability could arise out of the contract to supply water to the city for fire and other purposes. House v. Houston Water Works Co., 88 Texas, 233.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*Looney & Clark,* for appellant.

*B. Q. Evans,* for appellee.—Where a water company enters into a contract whereby it undertakes to furnish water for fire protection to a city and to the inhabitants thereof, any inhabitant of said city who has been damaged by reason of the failure to comply with that contract and undertaking may institute suit for a breach of said contract, because the obligation is to, and the contract was with, the citizen aside from the obligation and contract to the city.

It is true that a water company contracting with the city to construct waterworks and supply water, may fail to commence performance. Its contractual obligations are then with the city only which may recover damages, but merely for breach of contract. There would be no tort, no negligence, in the total failure on the part of the company. Bailey v. Mayor of New York, 3 Hill (N. Y.) 531; City of Fort Worth v. Crawford, 64 Texas, 202; City of Galveston v. Posnainsky, 62 Texas, 118; Lenzen v. City of New Braunfels, 13 Texas Civ. App., 335.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover from appellant the value of a dwelling house and its contents which were destroyed by fire in the city of Greenville on the 13th day of August, 1907. The petition alleged that in 1888 the

city of Greenville, by ordinance, entered into a contract with King and others and their assigns giving them the right to construct, maintain and operate in said city a complete system of waterworks for an adequate supply of water to said city and its inhabitants for domestic and manufacturing purposes and for the extinguishment of fires; that the said works were constructed and that appellant as the assign of said King and others became the owner thereof; that in consideration of the benefits from said franchise and the hydrant rentals paid by said city appellant undertook to supply the hydrants in said city with sufficient water pressure at all times to throw water seventy feet high; that in 1901 the said city rented from appellant until 1918 sixty fire hydrants at the sum of $40 per annum for each hydrant, to be paid out of the revenue for general purposes raised by taxation in said city, to be appropriated and set aside by said city for such purposes; that appellee is a tax payer, and that the property destroyed was constructed by him in reliance upon the performance by appellant of its contract with the city and that for that reason he did not provide other means to protect his property from fire; that on the date above named his property caught on fire; that the Greenville fire department was immediately notified and came to the scene, but that there was no pressure in the water mains and hydrants of appellant, and that on account of the failure of appellant to comply with its contract and its negligence in failing to maintain such pressure his property was entirely destroyed by fire. It was further alleged that appellant in consideration of its franchise, benefits and money received by it from said city "held itself out to the public as being able, capable and willing to furnish" sufficient water pressure in its mains for fire protection and that by reason of its failure so to do his property was destroyed by fire. In addition to this he alleged that he had on his premises hydrants that he had rented from defendant and for which he had paid and was then paying monthly rentals to defendant, and in consideration for such rentals defendant had agreed and contracted to furnish him water in said hydrants with sufficient pressure that in case of fire he might attach his hose to said hydrant and thereby extinguish said fire; that when the fire started he did attach his hose to said hydrant and undertook to put out the fire, and would have done so but for the failure of the appellant to have proper water pressure in its mains. He alleged his property to be of the value of $8,500, and prayed for judgment for that amount. Appellant answered by general demurrer, special exceptions, general denial and special answer. The case was tried before a jury on the 1st day of April, 1908, and resulted in a verdict and judgment for appellee for the sum of $1733. Appellant's motion for new trial being overruled, it duly excepted, gave notice of, and perfected an appeal.

Appellant assigns as error the court's action in refusing a special charge instructing a verdict for defendant. It is contended that a property owner can not hold a water company liable for loss of his property by fire because of its breach of its contract with the municipality to supply water for fire purposes. The contract is embraced in the terms of an ordinance passed by the city council of the city and

the acceptance thereof by the beneficiaries in said ordinance. The sections of the ordinance bearing upon this discussion are one, two, eight, nine, eleven, eighteen, twenty and twenty-one, in substance providing as follows: Section one stipulates that the purpose of making the contract is "to supply water to the city of Greenville and the inhabitants thereof." Section two names the source from which the water may be procured and the means by which the water company may store it. Sections eight and nine relate to extensions and are as follows:

"Extension of pipes shall be made from time to time upon a petition of property owners who may desire to take water for domestic or manufacturing purposes, provided an income from said property owners reach the sum of Four Hundred ($400) Dollars per annum per mile, or the proportional amount for the fractional part of a mile."

"Extension of pipes shall be made whenever ordered by the city council of Greenville, provided, that the city shall order the placing of fire plugs so that said fire plugs shall in no case be more than five hundred (500) feet apart."

Section eleven was cancelled by a judgment in the District Court and the following amendment was agreed upon and adopted December 12, 1901: "The city of Greenville agrees to and does hereby rent for the term beginning with the legal adoption and approval of this ordinance and assent thereto by the Greenville Water Company, and ending, to wit, the 2d day of August, 1918, the sixty hydrants now located upon the mains of said water company and in use for fire protection in said city, and shall pay to the water company the sum of Forty ($40) Dollars per hydrant per annum for each and every one of said hydrants, and the same price for any additional hydrants which it may hereafter order installed or placed upon the mains of the said water company up to the said 2d day of August, 1909.

"All hydrants shall be kept in repair and working order by the said water company. Whenever the mayor or chief of the fire department notifies the superintendent of the water company that any fire hydrant is out of repair then said water company shall cause said fire hydrant to be repaired at once, and in case of a delay of five days in making the desired repairs, then in that case the hydrant rental for said hydrant shall cease for the entire length of time the hydrant was out of repair by reason of failure to make the necessary repairs.

"The amount agreed to be paid under this ordinance for the year 1901 shall be paid out of the current revenues of said city for said year; and the city council of the city of Greenville shall annually appropriate and set aside out of the general fund such sum as may be necessary to pay the hydrant rentals herein agreed to be paid, and the sum so set aside shall constitute, be and remain, a fund for the sole purpose of paying said hydrant rental, and shall not be appropriated to any other purpose whatever."

Section eighteen provides that the city council shall locate the mains and hydrants stipulated for.

Section twenty is as follows: "The said waterworks company shall have the right to make all needful rules and regulations for the pro-

tection of said waterworks and for their operation; for the tapping of mains, proper size of service pipes, and for shutting off water for nonpayment of water rates by private consumers or for waste or for any wrongful use of water by any party."

Section twenty-one provides a maximum list of rates which private consumers shall pay for water they may use, and also contains the following: "No charge to be made for water for city hall, public schools, four (4) public water troughs, said troughs to be inclosed so as to prevent stock running at large from using, and citizens of the city are prohibited from using same except by permission of water company, and flushing gutters.

"The hydrants when erected to be used exclusively for the extinguishment of fires, necessary drill and practice of the city's fire companies, and the flushing and washing out of the paved gutters or sewers. But in the practice of the fire company not more than one hydrant to be used at one time, nor for a longer period of one (1) hour in the same week, notice to be given for at least five (5) hours previous to time set for such practice to the superintendent or engineer of said waterworks; for flushing of paved gutters or sewers any one of the hydrants to be used, but the use of all not to exceed forty (40) minutes each week and an extension of one minute in time for flushing to be made for each hydrant erected or extended piping. Same notice when hydrants are to be used for flushing as provided for fire companies' practice.

"All rates shall be payable quarterly in advance at the office of the water company. When no rate is established, contract may be made with the water company. No water will be furnished by meter measurement for less than fifty ($50) dollars per annum, and the party desiring to use meter must furnish it and pay fifty (50) cents per one thousand (1,000) gallons consumed."

The franchise was originally granted T. H. King, J. H. Cook, John W. Harrison, F. B. Nichols and Thomas Howard, their associates, successors and assigns. The Greenville Water & Electric Light Company was organized and incorporated and they took the franchises and contracts from the persons to whom it had been granted. The property was finally sold out by the receiver in the Federal Court and bought in by the present company, a corporation whose name is "The Greenville Water Company." It has the same franchise and the same property that the old company had. By the contract now in force the city is to pay $40 per annum per hydrant for each of the water company's fire hydrants and this is paid out of the general fund of the city.

The city of Greenville had a regularly and legally organized fire department, consisting of twenty-four officers and men and the necessary horses, hose carts, engines and apparatus to extinguish fires. When the company arrived at the fire the pressure was not sufficient and the property was entirely destroyed.

The question presented is, can a property owner hold a water company liable for loss of his property by fire resulting from a breach of its contract with the municipality to supply water for fire purposes? It is clear that a city owning its own waterworks can not be held

liable in an action for damages for failure to furnish sufficient water supply to extinguish fire. (House v. Houston Waterworks Co., 88 Texas, 233; Butterworth v. City of Henrietta, 25 Texas Civ. App., 467; Tainter v. City of Worcester, 123 Mass., 311; Fowler v. Athens Waterworks Co., 83 Ga., 222; Vanhorn v. City of Des Moines, 63 Iowa, 447.)

Appellant in support of its contention cites the case of House v. Houston Waterworks Company, *supra.* That was a suit by House against the Houston Waterworks Company to recover of the company for the value of certain property alleged to have been burned by reason of the negligent failure of the water company to furnish sufficient pressure as it had contracted to do, to throw water the height specified in the contract, by reason of which negligence plaintiff's property was destroyed by fire. The contract was between the Houston Waterworks Company, a private corporation, and the city of Houston, and stipulated that the purpose and intent of the contract was "to supply the city of Houston with water to maintain the cleanliness and health of the city, for the extinguishment of fires, and for the protection of property of the inhabitants of said city." The contract also provided for the furnishing of water to private consumers at the rate therein stipulated. It was held in that case that the contract there sued on was a contract between the city of Houston and the water company, and that no part of the contract justified the conclusion that the water company assumed a duty to the citizens. It was further held that unless the water company under the contract assumed a duty to the citizens of Houston no right of action accrued to a citizen to maintain a suit because of a breach thereof. Appellee maintains that the purpose of the contract being "to supply water to the city of Greenville and the inhabitants thereof," it is a contract made for the benefit of a class, to wit: the inhabitants of the city, and that he belongs to the class named. This contention is fully answered adversely to appellee in the opinion in the House case. The purpose of the contract in that case is substantially the same as that of the contract between the appellant water company and the city of Greenville, and, as previously stated, it was held that it was not a contract between the water company and the citizens of Houston, and that under its terms the company owed no duty to the citizens in the performance of its contract. But appellee argues that there is a distinction between the terms of the charter of the city of Houston, under which that city was operating at the time of the execution of that contract, and article 418 of the Revised Statutes, under which the city of Greenville is incorporated. We have examined the terms of the charter of the city of Houston at the time the contract construed in that case was executed, and article 418 of the Revised Statutes, under which the city of Greenville was incorporated, and are of the opinion that there is no material difference between them in conferring upon the respective cities power to provide water for the extinguishment of fires.

Again, appellee contends that the water company in consideration of its franchise, benefits and emoluments, undertook to perform a public duty to the individual citizens of the city of Greenville in the

operation of its waterworks, and that plaintiff, relying upon the water company's undertaking, constructed his house with reference to the location of the hydrants and mains, and failed to take any other precautions, such as taking out insurance, to protect his property, relying upon the faithful discharge of the duties of the water company. The proposition urged is, that the water company in consideration of the franchise and privileges which it enjoyed and the benefits and emoluments and profits that it derived from the conducting of its business, undertook to serve the public by furnishing an adequate supply of water to the city of Greenville and to its inhabitants for fire protection; and that while plaintiff did not construct his house specially with any understanding with the water company, yet he failed to carry insurance on his house, relying upon the protection that the water company had undertaken to furnish, and as a direct result of its failure to keep its mains and hydrants supplied with water, not only in accordance with its contract with the city and its inhabitants, but in accordance with its public undertaking, wherein the water company held itself out as being ready, willing and able to furnish necessary fire protection, plaintiff suffered and sustained the injury herein complained of. This proposition is fully met and answered by the opinion of Judge Brown in the House case. He says: "If the city of Houston had contracted with the defendant that it was to be liable to individual citizens for losses sustained by fires under such circumstances as are shown in this case, such contract would have been void, because the city had no power to make such contract. (Taylor v. Dunn, 80 Texas, 670; Becker v. Keokuk Waterworks, 79 Iowa, 422.) It being true that the city could not have made a contract with the defendant that it should be so liable, it follows that no such implied liability could arise out of the contract, for assuredly nothing could be implied which could not have been lawfully expressed in the contract." (88 Texas, 248.) That opinion is in accord with the great weight of authority in this country. Cleburne Water Co. v. City of Cleburne, 13 Texas Civ. App., 141; Allen v. Shreveport Water Co., 113 La., 1091, 37 So., 980; Lovejoy v. Bessemer Water Co., 41 So., 76; Nickerson v. Bridgeport Hydraulic Co., 46 Conn., 24; Foster v. Lookout Water Co., 3 Lea, 42; Davis v. Clinton Waterworks Co., 54 Iowa, 59; Fowler v. Athens Waterworks Co., 83 Ga., 219; Ferris v. Carson Water Co., 16 Nev., 44; Becker v. Keokuk Waterworks, 79 Iowa, 419; Howsmon v. Trenton Waterworks Co., 119 Mo., 304; Fitch v. Seymour Water Co., 139 Ind., 214; Britton v. Green Bay Water Co., 8 Sadler (Pa.), 237; Wilkinson v. Light, Heat & Water Co., 78 Miss., 389; Mott v. Cherryvale Water & Mfg. Co., 48 Kan., 12; Bush v. Artesian Hot & Cold Water Co., 4 Idaho, 618; Eaton v. Fairbury Waterworks Co., 37 Neb., 546; Boston Safe-Deposit Co. v. Salem Water Co., 94 Fed., 238; Metropolitan Trust Co. v. Topeka Water Co., 132 Fed., 702; Ukiah City v. Ukiah Water Co., 142 Cal., 173; Springfield Fire Ins. Co. v. Keesville, 148 N. Y., 46.

We are aware of the case of Guardian Trust Co. v. Fisher, 200 U. S., 57, 26 Supreme Ct. Rep., 186, and of the cases of Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340, 12 S. W.,

554; Gorrell v. Greensboro Water Supply Co., 124 N. C., 328, and Mugge v. Tampa Waterworks Co., 42 So. Rep., 81, and are not impressed with the reasoning in those cases. These decisions are against the great weight of the authority in this country. See note to opinion in the case of Mugge v. Tampa Waterworks Co., 6 L. R. A. (N. S.), 1171. The opinion of the Supreme Court of this State in the House case is exhaustive and well considered, and because we are impressed with the soundness of its reasoning and because it is the opinion of the highest legal authority of this State, we do not hesitate to follow it.

Appellee's house was supplied with water from the waterworks for his closet, kitchen, etc., and in addition he had one hydrant in the yard. He had no particular arrangement with the company that he was to be supplied with water further than his place was connected with the water company as stated, and he paid what they charged for water. He had a private hose that he used for sprinkling his yard and the street and for watering flowers. . He testified that he could have used it for putting out fire. When the fire was discovered part of the kitchen was on fire about twenty feet from the ground. The lawn hose had been used the evening previous for watering the lawn and was left attached to the hydrant, and there is evidence that someone at the fire attempted to use it to throw water on the kitchen roof. The pressure was insufficient and the water did not reach the fire. The appellee contends that he had a contract with the water company in consideration of a monthly rental whereby it undertook and agreed to furnish him with sufficient water and pressure in the mains so that by the use of a private hydrant and hose in his yard he could protect his property from fire. We do not agree to this contention. The evidence does not show that had there been sufficient pressure the fire could have been controlled by the garden hose. Besides, it appears from the evidence that it was not contemplated that the garden hose would be used to put out fires. The chief of the fire department testified that he never used one and never saw one used for that purpose.

It appearing that appellee is not entitled to recover under the facts as alleged and proven, it follows that the trial court erred in refusing to instruct a verdict for defendant.

The judgment is reversed and judgment is here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.