Oconto County, Appellant, vs. City of Gillett, Respondent.

*March 12—April 12, 1946.*

The cause was submitted for the appellant on the brief of *Harold W. Krueger,* special assistant district attorney, and for the respondent on the brief of *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls.

FRITZ, J.   The facts material on this appeal are stated in the complaint of Oconto county and the answer of the city of Gillett and an affidavit with annexed exhibits upon which it based its motion for summary judgment dismissing the complaint.   On May 22, 1935, Oconto county acquired title by a tax deed to certain real property described in the complaint and located in the city of Gillett (which was formerly the village of Gillett).   Pursuant to a resolution adopted on June 18, 1935, by the board of supervisors of the county, it sold that property under a land contract to George Baldwin and Walter L. Jolin for $12,500, of which the vendees paid $1,000 in cash and agreed to pay $200 on August 1, 1935, and a similar sum each month thereafter; and further agreed to pay "when due and payable all taxes and assessments that shall become due on this property after this date."   The vendees took immediate possession of the property and have continued to operate it as a manufacturing plant; and pursuant to the contract the county, on February 28, 1941, executed and delivered to the vendees a deed of the property.   For the year 1935, while the property was owned by the county, it was not assessed; but for the years 1936, 1937, 1938, and 1939, the assessor for the village of Gillett assessed the property to the vendees and they paid the taxes levied against the property for 1936.   But they did not pay the taxes levied for 1937, 1938, and 1939, amounting in the aggregate to $2,871.94; and these unpaid taxes were duly reported and returned annually as delinquent by the village treasurer and full credit was given for same by the county treasurer to the village at tax-settlement time for each of those years.   By a resolution which it adopted on January 16, 1941, the county board de-

clared that the 1937, 1938, and 1939 taxes against the property were illegal and void on the ground that it was owned by Oconto county at the times of the assessments thereof; and by that resolution the board also canceled the tax certificates which had been issued to the county for the delinquent taxes assessed on the property for those three years. On November 25, 1941, the county clerk notified the village of Gillett of the cancellation of the tax certificates and that the sums aggregating $2,871.94 levied on the illegal assessments were charged back to the village; and upon its failure and refusal to add such charge back to its tax roll, the county on June 1, 1944, through its county clerk, made and filed a claim against the city of Gillett. The city council adopted a resolution that the claim be denied. The city alleges in its answer to that complaint that the property was lawfully assessed and liable for the taxes in question; and that the action of the county by the resolution of June 16, 1941, declaring the 1937, 1938, and 1939 taxes illegal and void, and canceling the tax certificates issued therefor to the county, was without right and capricious. The city also alleges that this action to recover on account of the 1937 and 1938 taxes was not commenced within the six-year period of limitation provided by sec. 330.19 (2) and (3), Stats.

The county contends that on June 1, 1935, neither it nor its board of supervisors had the power or right to sell, by a land contract, the property in question, which it had acquired under a tax deed; that therefore that contract was void and the county continued to own the property in the years 1935 to 1939, inclusive; and that because of its ownership thereof it was not subject to assessment and taxation for those years. These contentions must be sustained. In 1935 the only power and authority of the county board in relation to the sale of property acquired by the county under a tax deed was by the method prescribed in sec. 75.35, Stats. 1935, which provided:

"The county board may, by an order to be entered in its records prescribing the terms of sale, authorize the county clerk or the county treasurer to sell and assign the tax certificates held or owned by the county, and also the county clerk *to sell and convey by quitclaim deed,* duly executed and delivered by such clerk under his hand and the county seal of such county, any such lands for which a deed has been executed to such county as provided in the next section."

In *Smith v. Board of Supervisors,* 44 Wis. 686, 692, 693, this court considered a proviso in sec. 1, ch. 138, Laws of 1861, authorizing the sale by the county board of tax certificates and of lands acquired by the county under tax deeds, which provided, "that the board of supervisors may, by an order to be entered in their minutes, prescribe the terms of sale and the rate of interest chargeable by such treasurer on such certificates." In construing that statute, the court concluded,—

"We must hold that the statute confers no power upon a county treasurer to make, and no authority upon the board of supervisors to order him to make, any other than an absolute and fully executed sale of tax certificates, and for cash in hand. The very language of the power itself, 'to sell and transfer by assignment,' must mean such a sale with present payment, and by assignment and delivery, and no other. If, then the board of supervisors authorized the making of the contract set out in the complaint (as we must assume they did for the purposes of this demurrer), they acted without authority, and, as we think, in violation of law, and their action in this respect was *ultra vires* and void, and conferred no authority whatever upon the county treasurer to enter into this contract."

These conclusions are likewise applicable to the construction and meaning of the terms "prescribing the terms of sale," "to sell and assign the tax certificates," and "to sell and convey by quitclaim deed," which are used in the above-quoted provision in sec. 75.35, Stats. 1935. As this statute specifically provides that the county board may authorize the county clerk "to sell and convey by quitclaim deed," the board cannot be deemed

to be authorized to sell by land contract, and that contract was void and the county continued to be the owner of the property in the years 1935 to 1939, inclusive. Therefore, in view of sec. 70.11 (2), Stats., the property was then exempt from taxation.

It is further contended by the county that when the county clerk, at the direction of the county board, notified the village of Gillett of the cancellation of tax certificates issued for the taxes assessed for 1937, 1938, and 1939, and that the amounts of the taxes which were then levied were charged back to the village, there was compliance by the county with the provision in sec. 74.72, Stats., which prescribes that,—

"Whenever any town shall have failed to levy, collect or pay over to the county treasurer any state or county tax apportioned to and charged against such town in any year, or any part thereof, the county board of such county shall, in the next or any succeeding year, charge all such delinquent taxes and a penalty of twenty-five per cent to such delinquent town; and the county clerk shall add the same to the amount of the annual state and county tax apportioned to such town for such succeeding year."

And the county contends that by reason of such compliance with that provision and because of the village's failure or refusal to thereupon spread on the tax roll the amounts charged back by the county for the taxes for 1937, 1938, and 1939, the county can maintain this action of debt against the municipality to recover back the amount of the credits which were given the municipality in its settlement with the county treasurer in previous years. In support of those contentions the county claims that "There is no other statutory remedy in a situation of this kind to recover for the county, moneys for which it gave the municipality credit in tax settlements and . . . to hold that an action of debt does not lie, would for all practical purposes bar the county from any remedy and would result in un-

just enrichment on the part of the municipality from which the money is due."

It is apparently true that there is no provision in the statutes which provides a remedy for the recovery of a money judgment by the county against a municipality to require the latter to pay to the county amounts for which it gave the village credit in tax settlements made under such circumstances as exist in this case. In sec. 74.72, Stats., there clearly is no provision which can be deemed to authorize the recovery by the county of any such judgment for the payment to it by the municipality of the amount which may be charged back against it by the county under that statute. Neither is a recovery of any such judgment against a municipality authorized by any provision in sec. 74.66, Stats., which reads:

"All losses that may be sustained by the default of any officer of any town, city or village in the discharge of the duties imposed by this title shall be chargeable to such town, city or village; and all losses sustained by the default of any county officer in the discharge of such duties shall be chargeable to such county; and the county board shall add all such losses to the next year's taxes of such town, city or village, or county, as the case may require."

Under secs. 74.66 and 74.72, Stats., the county is authorized to charge back and add to the next year's taxes of the municipality such taxes, which were apportioned and charged to it, as it was to collect or pay over to the county; and also all losses sustained under the circumstances stated in sec. 74.66, Stats. That is the remedy provided by the statutes; and as there is no statutory authorization for the maintenance by the county of an action in debt against the defendant to recover judgment for the payment of the amount in question to plaintiff, it cannot recover in this action. In *Crandon v. Forest County,* 91 Wis. 239, 244, 64 N. W. 847, the court said:

"The levy and collection of taxes are governmental rather than municipal or corporate functions; delegated to municipal or county officers, but still governmental. 'It may well be claimed that in the exercise of these functions such officers are public officers, discharging public and not municipal or corporate duties.' *Wallace v. Menasha*, 48 Wis. 79, 85; *Hayes v. Oshkosh*, 33 Wis. 314. It seems that in such cases the maxim *respondeat superior* does not apply, and that no action will lie against the corporate body unless it is expressly given."

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

RECTOR, J., took no part.